KYLE *v.* WOOD, et ux.

No. 40129 April 23, 1956 86 So. 2d 881

718

*Stone & Stone,* Coffeeville, for appellant.

*John P. Horan,* Water Valley, for appellees.

KYLE, J.

The appellant O. T. Kyle, complainant in the court below, filed his original bill of complaint in the Chancery Court of Yalobusha County against the appellees, Joe E. Wood and Mrs. Ethel Wood, defendants, alleging that he was the owner of an undivided one-half interest in approximately 200 acres of land in Yalobusha County, fully described in the bill of complaint, and that the appellees, Joe E. Wood and Mrs. Ethel Wood, were the owners of the remaining undivided one-half interest in the land, and in his bill the appellant asked for a partition sale of the land for a division of proceeds among the cotenants according to their respective interests. In his bill the appellant alleged that he had acquired title to the undivided one-half interest in the land by the last will and testament of J. A. Wood, deceased, who was the owner of the undivided one-half interest at the time of his death. The appellant alleged in his bill that the above mentioned undivided one-half interest in the land had been devised to him as remainderman after the death of Mrs. Molly Wood, the wife of the testator to whom the testator had devised a life estate.

The appellees in their answer denied that the appellant was the owner of an undivided one-half interest in the 200 acres of land, or any part thereof. And the appellees averred in their answer that J. A. Wood, by his will, had devised and bequeathed all of his property of every kind to his wife, Mrs. Molly Wood, ''to have and to hold during her lifetime, and to use, sell and dispose of as she sees fit;'' and that Mrs. Molly Wood, after the

death of the testator, had sold and conveyed the undivided one-half interest in the 200 acres of land, which her husband had owned at the time of his death, to the appellees a fee simple title to the undivided one-half interest in the land, and that the appellant owned no interest in the land.

The cause was heard by the chancellor upon the pleadings, the record evidence and an agreed stipulation as to the facts.

The record shows that J. A. Wood died on April 27, 1952, and that he was the owner of an undivided one-half interest in the above mentioned 200 acres of land at the time of his death. He left surviving him his wife, Mrs. Molly Wood, but he left no children. His last will and testament was duly admitted to probate by a decree of the chancery court of Yalobusha County on May 24, 1952. The will which was dated September 18, 1948, is in words and figures as follows:

"STATE OF MISSISSIPPI
COUNTY OF YALOBUSHA

"I, J. A. Wood, of Yalobusha County, Mississippi, being above the age of 21 years, and of sound and disposing mind and memory, do hereby make, publish and declare this to be my last will and testament.

"I will and give all my property of every kind wherever located to my beloved wife, Mrs. Molly Wood, to have and to hold during her life time to use, sell and dispose of as she sees fit; and at her death, then such property left to my said wife by me is to be given to my nephew, by marriage, Arthur Kyle.

"And I name and appoint Everett Brooks, the executor of this my last will and testament, and direct that he be not required to give bond, the bond being by me waived.

"In witness whereof, I do sign and execute this and do declare the same to be my last will and testament, this the 18th day of September, 1948.

s/s J. A. Wood

Witnesses:

s/s Wayne B. Williamson

s/s Thurman Brooks".

The record shows that on October 8, 1952, Mrs. Molly Wood executed and delivered to Joe E. Wood and his wife, Mrs. Ethel Wood, a warranty deed conveying to them the undivided one-half interest in the above mentioned 200 acres of land, which had been left to her by her husband. The consideration recited in the deed was $2,200, paid in cash. On February 2, 1953, Mrs. Molly Wood executed and delivered to the grantees a correction deed for the purpose of correcting an error in the description of the land which she had undertaken to convey to them in the deed dated October 8, 1952. The record does not show the exact date of Mrs. Wood's death.

The chancellor found that by the terms of the will Mrs. Molly Wood was invested with the power to sell and convey the property devised and bequeathed to her, and that the deed of conveyance executed by her to Joe E. Wood and his wife, Mrs. Ethel Wood, conveyed to the grantees a valid fee simple title to the undivided one-half interest in the 200 acres of land, and that the appellant owned no interest in the land. And the chancellor entered a decree dismissing the appellant's bill. From that decree the appellant has prosecuted this appeal.

Only one question is presented for our decision, and that is, whether the deed executed by Mrs. Molly Wood to the appellees on October 8, 1952, and the correction deed executed by her on February 2, 1953, conveyed to the appellees a valid fee simple title to the undivided one-

half interest in the land which was owned by J. A. Wood at the time of his death.

We think that question must be answered in the affirmative.

■■ The estate devised to Mrs. Wood by the will of her deceased husband was an estate for life, with the power to sell and dispose of the property as she saw fit. The power to sell and dispose of the property carried with it authority to convey the full interest in the land owned by the testator at the time of his death, which was an undivided one-half interest in fee simple; and the warranty deeds executed by Mrs. Wood to the appellees conveyed that interest to the grantees.

■■ The courts generally hold that where the testator devises his estate to a life tenant with a remainder over, and then gives the life tenant absolute power and authority to dispose of his whole estate, the exercise of such power by the life tenant by conveying the property to other persons during his life, carries the fee and defeats the right of the remaindermen. Rail v. Dotson, 14 Smedes & M. 176; Andrews v. Brumfield, 32 Miss. 107; Warren v. Ingram, 96 Miss. 438, 51 So. 888; Murdoch v. Murdoch, 97 Miss. 690, 53 So. 684; Archer v. Palmer, 112 Ark. 527, 167 S.W. 99, Ann. Cas. 1916B, 573; Reddin v. Cottrell, 178 Ark. 1178, 13 S.W. 2nd 813; Bussone v. Marsh, 140 Or. 331, 12 P. 2d 329; Steiff v. Seibert, 128 Iowa 746, 105 N.W. 328, 6 L.R.A. (N.S.) 1186.

■■ "A general power to sell, without restriction as to either purpose or grantee, leaves the donee of the power free to sell and do as he wishes with the proceeds, without responsibility to anyone, even though the donee of the power has a life estate and there is a gift over of the remainder. This has been held true even though the sale may have been made for the purpose of defeating the remainder.

"In the absence of limitation, power to sell or dispose of property carries authority to transmit the full quan-

tum of the estate held by the donor, usually a fee simple interest.'' 3 Page on Wills, pp. 868, 869, Sec. 1320.

In the case of Andrews v. Brumfield, 32 Miss. 107, the Court held that a devise to one for life, with directions that the property shall be delivered to the legatee as soon after the testator's death as possible, ''that she may have full control of the same, and be empowered to dispose of the same as she may think proper,'' vested in the devisee an estate for life only, but with an unrestricted power of disposing of the fee.

In its opinion in that case the Court said:

''In the first and second clauses of the will, the property bequeathed to Mrs. Andrews, is limited to her, expressly, for the term of her natural life. The language is too plain to admit of the least doubt as to the intention. Hence, if the will contained no other provision, it could not be questioned that only a life estate was given to her. But by the seventh clause, in which the testator declares it to be his will, that all the property given to Mrs. Andrews by the 1st and 2nd clauses, 'shall be delivered into her possession as soon after (his) death as possible; that she may have full control of the same, and be empowered to dispose of the same as she may think proper,' it is insisted that this result has been changed. We think that this language admits of but one construction. It appears, manifestly, to have been the testator's intention to confer an unrestricted power of disposition. Taking all of the claims together, as disclosing the testator's intention, they show, first, that the property was given for life, and secondly, that the legatee should possess the power to sell, give or transfer to whomsoever she might elect.''

In the case of Warren v. Ingram, 96 Miss. 438, 51 So. 888, the Court held that, where a testator had devised lands to his wife, ''to have and to hold during her life, and to do with the same as in her judgment she may

deem best," the devisee had power to convey the lands in fee simple. In that case the Court had under consideration the will of John I. Ingram, the effective language of which was as follows: "I hereby bequeath to my wife, Mary Jane Ingram, all my real estate lying in Tate, Marshall and DeSoto counties, Mississippi, and also all my personal property, notes, and accounts, and any and all interest of which I may be possessed, to have and to hold during her life, and to do with the same as in her judgment she may deem best." The widow conveyed away by warranty deed the lands in controversy, and she died March 9, 1908, intestate. The bill of complaint in the case was filed by the four surviving children of Mr. Ingram against the purchasers of the lands in controversy, and against Mr. Stutts, who was the surviving husband of a deceased daughter of Mr. Ingram, the bill being based on the idea, so far as the purchasers were concerned, that the widow's deed was unauthorized by the will and only conveyed her life estate, which, of course, terminated at her death. The purchasers demurred to the bill, and the demurrer being overruled, appealed to this Court. This Court reversed the decree of the lower court, and sustained the demurrer, and dismissed the bill; and in its opinion the Court said:

"The authorities are uniform to the effect that a devise of land to one indefinitely, and to do with the same at his discretion, will invest him with the fee; but if the devise is for life only, and to do with at his discretion, the devisee is invested with a life estate only, with an added power. Under the terms of this will, therefore, the widow took only a life estate, with an added power. What was this power? The claim of appellees is that it was only the power to dispose of her life estate, and not of the fee. If appellees are correct in this, the addition of the power would be mere surplusage; for she had that power without its being expressly conferred. * * *

"We are clearly of the opinion that, under the will in question, the widow of the testator had power to convey an estate in fee simple to the land in controversy."

 █ It may be argued that the rule laid down in Andrews v. Brumfield, supra, and reaffirmed in Warren v. Ingram, supra, with reference to a general power of disposition given to the life tenant, is not controlling here, for the reason that in this case there was an express devise of the remainder interest after the death of the life tenant, while in the Brumfield case and the Ingram case the will was silent as to the remainder interest. But we think that the fact that there is a gift over of the remainder interest after the death of the life tenant does not affect the life tenant's power to sell and dispose of the property when the power to sell and dispose of the property is conferred upon the life tenant without restriction as in the case that we have here.

In the case of Rail et al. v. Dotson et al., 14 Smedes & M. 176, the Court had under consideration the will of John Rail, deceased, and a codicil thereto. The testator, after devising certain real and personal property to Richard Harding, as trustee for his daughter, Mary Hume, to her sole and separate use, to the exclusion of her husband, said: "It is my will, that the said Mary Hume shall have the entire control and disposal of the proceeds and profits of the land and negroes devised to her, for life, and at her death the said land and negroes shall be divided among her children, but in case she should die without issue, then said land and negroes shall be equally divided among my surviving children."

In the codicil, the testator revoked the appointment of Harding, as trustee for his daughter, Mary Hume, and then said: "It is my will, that all the devises in my will, for the benefit of my said daughter, Mary Hume, shall vest in Mrs. Amelia A. Calhoun, as trustee for my

said daughter, and for her sole and separate use, and I hereby appoint the said Amelia to be trustee for my said daughter; and it is my will that the said Mary Hume shall, at her election, be entitled to the possession, use, management and control, of all the property devised to her in said will, during her life, and to sell and exchange the same, and shall have full power to dispose of the same, or any part thereof, at her discretion, by her last will and testament."

The first point the Court had to decide in that case was whether the codicil enlarged the life estate given by the will into a fee simple. The Court held that it did not; that, taking the two clauses together, the estate devised to Mary Hume was still an estate for life, with a power of sale and exchange, or a power of disposition by will, superadded; and that such power appended to an estate for life, did not enlarge it into a fee simple.

The Court clearly recognized the life tenant's power of disposition, however, and in its opinion said: "On the whole, we think the intention of the testator was, to give his younger children, on a certain event, a portion of the estate devised to Mrs. Hume, if she did not cut them out by the exercise of her power, and that there is nothing in the law, to prevent carrying this intention into effect."

In Murdoch v. Murdoch, 97 Miss. 690, 53 So. 684, the Court held that where the widow of a testator was given by his will the use and management during her life of the decedent's property, with power to sell any of it as she might deem best, subject to a provision that all of it should go at her death to the brother and sister of the testator, the widow acquired a life estate, with power, if she desired, to consume the entire estate.

In its opinion in that case the Court said: "The main and dominant purpose of the will was to give the entire use of all the property to the wife during her life, even

if it resulted in an entire consumption of the estate. * * * No absolute and fixed estate was left to the brothers and sisters. No limit is placed on the right of the wife to consume the estate for her own use. She may use it, a part of it, or all of it, and only 'what is left' goes to his brothers and sisters. That this interpretation is correct is apparent, we think, on the face of the will.''

■■■ It thus appears that the rule is well settled by our own decisions, that where a testator gives an estate for life only, with the added power to the life tenant to convey the estate absolutely, the life tenant may defeat the estate of the remainderman under the will by the exercise of the power of disposal during his lifetime.

The appellant's attorneys argue, however, that there is an irreconcilable conflict between the clause in the will in this case, which confers upon the life tenant the absolute power to sell and dispose of the property as she sees fit, and the next succeeding clause, which provides that at the death of the life tenant the property left to her is to be given to the appellant, and that the court should apply the rule that when reconcilliation between inconsistent provisions is impossible, the latter of the two provisions must prevail upon the theory that it embodies the last expression of the testator's intention.

■■■ But all rules of constructions are designed to ascertain and give effect to the intention of the testator, and that intention is to be collected from the whole will, and from a consideration of all provisions of the instrument and every part thereof, taken together, rather than from any particular clause, sentence or form of words. ■■■ If there are apparently inconsistent or repugnant provisions in the will, every effort must be made to harmonize such conflicting provisions; and where the language used in one part of a will is susceptible of a two-fold construction that construction should be adopted which is most consistent with the intention of the testator as ascertained by other provisions of the will. ■■■

The language used in a single clause or sentence is not to control as against the evident purpose and intention of the testator as shown by the whole will. 57 Am. Jur. 735, Wills, par. 1137, and cases cited. Gordon v. McDougall, 84 Miss. 715, 37 So. 298, 5 L.R.A. (N.S.) 355; Harvey v. Johnson, 111 Miss. 566, 71 So. 824.

In the case that we have here, as in Warren v. Ingram, supra, the testator devised to his wife only a life estate; but it was a life estate, with an added power, the power in this case "to use, sell and dispose of the property as she saw fit. The appellant's claim is that the power vested in the life tenant was only a power to sell and dispose of her life estate, and not the fee. But if that interpretation were adopted, it would mean that no effect whatever would be given to the clause in the will conferring the power; for the life tenant would have had the power to sell and dispose of her life estate without that power being expressly conferred upon her.

We think that it is manifest that the testator intended that Mrs. Wood should have the power to sell and dispose of the testator's entire interest in the property; and when Mrs. Wood sold the undivided one-half interest in the 200 acres of land to the appellees and executed the warranty deed therefor, she exercised the power conferred upon her in the will, and the deed which she executed conveyed to the appellees the entire interest in the land owned by the testator at the time of his death.

The decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C.J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.