310 So.2d 708 (1975)
In the Matter of the ESTATE OF Dennis P. GRANBERRY, Deceased.
Betty Granberry BURGESS et al.
v.
William S. GRANBERRY et al.
No. 47940.
Supreme Court of Mississippi.
March 31, 1975.
*709 Butler, Snow, O'Mara, Stevens & Cannada, Jay A. Travis, III, D. Carl Black, Jr., Jackson, Deavours, Weems & Gilchrist, Laurel, for appellants.
Pack, Ratcliff & Thaxton, Laurel, for appellees.
Before GILLESPIE, INZER and BROOM, JJ.
INZER, Justice.
This is an appeal by Betty Granberry Burgess and her daughter Susan Burgess Boyle from a decree of the Chancery Court of the Second Judicial District of Jones County construing the last will and testament of Dennis P. Granberry, deceased. We affirm.
The will involved was executed on April 3, 1967, and the testator died on September 8, 1972. After the will was duly probated the executors filed a petition seeking a construction of certain provisions of the will. Several questions were posed for construction and were answered by the court, but the only question involved on this appeal is whether the Chancellor was in error in holding that the dominant intent of the testator was to devise to his son, William S. Granberry, all of his stock in the Richton Bank & Trust Company. The pertinent provisions of the will are as follows:
Second. I hereby give, devise and bequeath to my good friends, O.B. Bowen, Jr., and his brother, William F. Bowen, both of Richton, Mississippi, in cash, the sum of $1,000.00 each, from the proceeds of my estate, as an expression of my sincere and heart-felt appreciation to them for their complete loyalty and joint efforts with me in the affairs of the Richton Bank & Trust Company of Richton, *710 Mississippi, both of whom fully understand and appreciate my ownership of Fifty-Two per cent (52%) of the capital stock of the said bank, which under the next following provision of this my Will is thereby transferred, in absolute and perfect ownership to my son, William S. Granberry, henceforth; and I do now urge that my said son and my aforesaid good friends, O.B. Bowen, Jr., and his brother, William F. Bowen, Jr., and his in the future to work together for the best interest of the said bank, which their father and I established with complete understanding.
Third. After fully satisfying the foregoing provisions of this my Will, I hereby give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed, of every kind and character, wheresoever situated or being, which I may own, or in which I may be interested at the time of my death, as follows, to-wit:
1. I hereby give, devise and bequeath to my son, William E. Granberry, Forty percent (40%) thereof. As a portion of the said Forty percent (40%), I hereby give, devise and bequeath to my said son, William S. Granberry, all of my stock in the Richton Bank & Trust Company, of Richton, Mississippi, in absolute and perfect ownership, to be owned by him outright, for the good of himself and his family, with the remaining portion of his Forty percent (40%) to come from the residue of my estate.
2. I hereby give, devise and bequeath to my beloved wife, Susie F. Granberry, Twenty percent (20%) thereof. In explanation for the differential in the provisions of this my Will for my wife and children, in so far as the quantity of my estate coming to each of them is concerned, I have taken into consideration the fact that my beloved wife now has in her own name and account sufficient worth, financially to provide for herself for the remainder of her natural life, and have so acted knowing full well that our two living children will see to it that she is well provided for personally and physically. Furthermore, I have afforded a substantial portion of her personal finances. I hereby further direct that in case of the inability of my beloved wife to properly handle her own affairs, by reason of sickness or disability, or for any other reason, then and in such event I hereby nominate, constitute and appoint the aforesaid Richton Bank & Trust Company to serve as the Legal Guardian of her person and estate, under the supervision of my three (3) executors hereinafter named, and their successors in office.
3. I hereby give, devise and bequeath the remaining forty percent (40%) thereof to the Richton Bank & Trust Company of Richton, Mississippi, as trustee and in trust under the provisions of this my Will, for the use and benefit of my daughter, Betty Granberry Burgess, and for the use and benefit of my granddaughter, Susan Pierce Burgess, and said bank serving as trustee under the direction and supervision of my three (3) executors hereinafter named, and/or their successors in office.
At the hearing the following stipulation was agreed to by the parties:
It is stipulated that for the purpose of this hearing that the value of the stock in the Richton Bank and Trust Company owned by the testator exceeded forty percent of the assets of the estate passing under the will, and that for the purpose of this hearing we are not going into the matter of value beyond that; that if the construction of the will by the Court requires proof of value or finding of values that the record will be kept open for production of evidence and further findings by the court as to values.
The chancellor rendered a well-reasoned written opinion which may be best summed *711 up in the Chancellor's own words as follows:
Therefore, it is the Court's opinion that under the last will and testament of Dennis Granberry, that it is apparent from a reading of the entire will that the testator's intent was that William S. Granberry receive all of the stock, or all of his stock of the Richton Bank & Trust Company, and in addition thereto, was to receive a portion of the residue of the estate after the devise of the stock in the event the stock did not constitute as much as forty percent of the value of the estate.
Appellants contend that the Chancellor was in error and that the dominant intent of the testator was to treat his children equally. Appellants admit that it was the intent of the testator that William S. Granberry receive all the stock owned by the testator in the Richton Bank & Trust Company, but contend that he was to receive it only in the event that the value of the stock was less than forty percent of the estate. Appellants rely on the rule that when the language of the will is ambiguous and the intent of the testator is obscure, a construction of the will which will effect a just and natural disposition in accordance with the laws of descent and distribution will control unless there is a manifest intention to the contrary. Consequently, appellants argue that since the will must operate on the estate as it exists at the death of the testator and at that time the value of the stock exceeded forty percent of the estate, the will should be construed so as to limit the amount of stock that William S. Granberry received to forty percent of the net value of the estate.
We have said in numerous cases that the fundamental rule governing the construction of all wills is to ascertain the intent of the testator. This intent must be gathered from the entire will or as is sometimes said "from the four corners of the instrument," giving due consideration and weight to every word in the will. The language used in a single clause or sentence does not control against the purpose and intention as shown by the whole will. The will must be construed in the light of the circumstances surrounding the testator at the time the will was written.
When the intent of the testator has been in this way ascertained, all minor, subordinate and technical rules of construction must yield to the paramount intent thus ascertained. Carlisle v. Carlisle, 233 So.2d 803 (Miss. 1970); Kyle v. Wood, 227 Miss. 717, 86 So.2d 881 (1956); and Ball v. Phelan, 94 Miss. 293, 49 So. 956, (1908).
Construing this will in the light of this rule, we are of the opinion that the Chancellor correctly construed it. We know from this will that the testator was a successful businessman. The evidence reflects that his son William S. Granberry was at the time of the execution of the will a director in the Richton Bank & Trust Company and shortly thereafter became an officer in the bank. We also learn from the will that the testator was interested in seeing the control of the bank be placed in the hands of his son after his death. It is not unusual or unnatural for a man who has established a successful business and controlled it for many years to desire to pass that control into the hands of his only son after his death. The intent of the testator in this regard is clearly reflected in the second paragraph of his will wherein he bequeathed to O.B. Bowen, Jr. and William F. Bowen the sum of $1,000 each, in appreciation of their loyalty and cooperation in the affairs of the bank. Then he says, "both of whom fully understand and appreciate my ownership of fifty-two percent of the capital stock of said bank, which under the next following provision of this my will, is thereby transferred in absolute and perfect ownership to my son, William S. Granberry, henceforth." (Emphasis added). Then the testator makes it crystal clear that he intends for his son to have the control of the bank by urging his son and the Bowen brothers to work together *712 for the best interest of said bank. We gather from this paragraph that the thing foremost in the mind of the testator when he executed this will was to pass the ownership and control of the majority interest of the bank into the hands of his son.
It is also significant that the testator says in this paragraph that in the next following provision of his will the ownership of 52 percent of the capital stock of the bank is "thereby transferred, in absolute and perfect ownership to my son, William S. Granberry, henceforth;". This statement negates any idea that he intended to limit the devise of the stock to forty percent of his estate because he said the fifty-two percent of the capital stock is in the following paragraph transferred to his son in absolute and perfect ownership.
The problem in this case arises from the wording of Section 1 of the third provision of his will which is as follows: "I hereby give, devise and bequeath to my son, William S. Granberry, forty percent thereof. As a portion of said forty percent I hereby give, devise and bequeath to my son William S. Granberry all my stock in the Richton Bank & Trust Company, of Richton, Mississippi, in absolute and perfect ownership to be owned by him outright for the good of himself and his family, with the remaining portion of his forty percent to come from the residue of my estate." When we read this section in connection with what was said in the foregoing provisions of the will it is apparent that the testator intended and did devise all of his stock in the Richton Bank & Trust Company to his son. Although the devise is in the residuary clause of his will, it in reality amounts to a specific devise of all of his stock in the bank to his son. However, it is contended that William S. Granberry cannot take all the stock because this clause limits his portion to forty percent of the net value of the estate, and the value of the stock at the death of the testator exceeded forty percent of the estate. This section of the will must be construed in the light of the circumstances existing at the time the will was executed and what was said in the will. It must be remembered that Mr. Granberry was a businessman and no doubt knew the value of his property when he executed this will. From what he said, we know that his stock did not exceed forty percent of his estate at that time because after devising the stock to his son in absolute and perfect ownership, to be owned by him outright, he stated "with the remaining portion of the forty percent to come from the residue of my estate." Consequently, what the testator actually says is that he is devising all of his stock to his son and in addition to the stock the remaining portion of the forty percent is to come from the residue of the estate. We think that this explains what the testator meant when he said that as a portion of the forty percent he was giving his son all of the stock in the Richton Bank. We are unable to see how this section can be construed to mean that William S. Granberry was only to get all the stock in the event it did not exceed forty percent of the net value of the estate.
The ambiguity, if any, in this will arises from a change of circumstances that occurred after the execution of the will. That is, at the time of the death of the testator the value of the stock exceeded forty percent of the net value of the estate. The question then arises does the fact that at the time of the death of the testator over five years later the stock exceeded forty percent of the estate have the effect of limiting the amount of stock his son received under the terms of the will to forty percent of the net value of the estate. We think not, because to do so, would defeat the dominant intent of the testator that his son have control of the bank. We do not think that a change of circumstances after the date of the execution of the will should defeat the intent of the testator in this regard. However, appellants argue that since the will must operate or speak as of the time of the death of the testator and at that time the value of the stock exceeded *713 forty percent of the net value of the estate, the will should be construed so as to limit the amount of stock that William S. Granberry receives to forty percent of the value of the estate. The almost universal rule is that for the purpose of construing the will, a will must be construed in reference to the circumstances that existed at the time of the execution. Justice Gillespie, speaking for the Court stated in Lee v. Foley, 224 Miss. 684, 80 So.2d 765 (1955), as follows:
The rule that a will speaks as of, or takes effect only upon, the death of the testator, relates to the effect and operation of the instrument, not to its construction. For purposes of testamentary interpretation a will must be considered with reference to the circumstances existing at the time of its execution. 57 Am.Jur., Wills, Sec. 1209. The language of a will must be construed as of the date of its execution and in the light of the then surrounding circumstances. 57 Am.Jur., Wills, Sec. 1145. (244 Miss. at 689, 80 So.2d at 767).
57 Am.Jur., Wills, Section 1145 (1948), states in part as follows:
Although a will speaks only from the maker's death, the language used therein must be construed as of the date of its execution and in the light of the then surrounding circumstances; and, generally speaking, no changes in the situation surrounding the testator or the beneficiaries named in his will occurring after the execution of the instrument may be considered in ascertaining the testatorial intention. It is the intention of the testator spoken in the words of his will, and not any intention which may be deduced from speculation as to what he would have done had he anticipated a change of the circumstances surrounding him at the time of the execution of the will, that is to govern in construing the instrument.
Consequently, we cannot and should not speculate as to what the testator would have done had he anticipated at the time he wrote the will that the value of the stock in the Richton Bank & Trust Company would exceed forty percent of his estate at the time of his death. Furthermore, the testator, as a businessman, being aware of the value of the assets of his estate, did not see fit to change the provisions of his will prior to his death and we should not do so by judicial construction after his death.
This case was considered by a conference of the Judges en banc and for the reasons stated, we are of the opinion, after reading the entire will, that the chancellor was correct in holding it was the intention of the testator that his son William S. Granberry receive all his stock in the Richton Bank & Trust Company, although at the time of the testator's death, it exceeded forty percent of the value of the estate. Therefore, the decree of the Chancery Court must be and is affirmed and the cause is remanded for further proceedings.
Affirmed and remanded.
All Justices concur except GILLESPIE, C.J., and SMITH and SUGG, JJ., who dissent.
GILLESPIE, Chief Judge (dissenting).
Being unable to bring my views into accord with those of the majority, I respectfully dissent.
In my opinion, the majority opinion is grounded on two basic errors: (1) The dominant intent of the testator was not to give his son all of his bank stock regardless of its value, as held by the majority, but to dispose of the residue of the estate forty percent to each of his children and twenty percent to his wife; and (2) the decision of the majority is directly contrary to the rule universally adhered to in Mississippi, as well as elsewhere, that the law favors that construction of a will which conforms most nearly to the general law of inheritance and which results in a just and reasonable disposition of property.

*714 I.
The dominant intent of the testator was not to give his son, William S. Granberry, all of his bank stock regardless of its value, but to the contrary, he intended to treat his children equally and to give his son the bank stock only as a part of the son's forty percent share of the residue. I shall not quote in this dissent the pertinent terms of the will which have been set forth verbatim in the majority opinion, but call attention to the following factors which, in my opinion, show conclusively that the majority was in error in the determination of the dominant intent of the testator.
(1) In the second paragraph of the will the testator made two special bequests to O.B. Bowen, Jr., and William F. Bowen and stated that he owned fifty-two percent of the capital stock of the bank "which under the next following provision of this my will is to be transferred." Thus, the testator did not give the stock to his son as a special bequest, which he obviously would have done if he had intended to do so.
(2) The gift of the stock to his son was in the third paragraph and the gift was accompanied by the specific limitation that it was given as "a portion of the said forty percent (40%)." This raises the question of how the testator could more specifically state that the son would get the stock only as a portion of his forty percent share of the residue.
(3) The testator was careful to explain why he was not giving his wife an equal share of his estate, clearly indicating an intent of equal treatment of the objects of his bounty.
(4) The courts take into account, as demonstrated by the authorities hereinafter cited, that unequal treatment of natural heirs is abhorrent to the law as it is to normal people; and absent estrangement or previous gifts (as to the wife in this case), parents strive to treat children equally since this is a universal trait that tends to promote family harmony and solidarity.
The majority is saying by its interpretation of the will that the testator thought more of the son's control of the bank than he did of his own daughter and family harmony, although there is not a word in the will that he did not love his daughter as much as he did his son.
The majority opinion apparently rests the decision in large part upon the words in the second paragraph wherein the testator states that under the next following provision (the residue clause) his bank stock is transferred "in absolute and perfect ownership to my son," a statement which is repeated in the third paragraph. Of course, this has nothing to do with the quantity of the estate which is going to his son, but the quality of the title that was to be given to his son. In my opinion it is a distortion to indicate that this has anything to do with the quantity of the estate his son is to receive.
The petition of the executors for construction of the will states that the fifty-two percent of the bank stock owned by the testator constitutes approximately two-thirds of the total value of the assets passing under the will. Assuming this is the correct value of the bank stock, then by the decision of the majority the son, instead of receiving forty percent of the residue as the will provides, will receive 66 2/3% and the wife's and daughter's shares will be diminished accordingly, the wife will receive 11 1/9% and the daughter will receive 22 2/9%. Under the interpretation placed on the will by the majority, if the bank stock constituted the entire estate it would all go to his son and nothing to his wife and daughter. This demonstrates the error of the majority in construing this will. The words of the will do not justify this construction.

II.
The chancellor found that the will was ambiguous and he is correct. Although the *715 will on its face is not ambiguous, it is ambiguous in that it is impossible to give the son all of the bank stock and also give the wife and the two children the proportions of the estate stated in the residual clause. Thus, the will is ambiguous in its application to external facts as of the time of the testator's death. In such a situation the courts must construe the document as ambiguous. Cf. Payne v. Campbell, 250 Miss. 227, 164 So.2d 780 (1964).
The majority errs in failing to recognize and apply the rule well established in this state and elsewhere that absent a clear intent to the contrary that construction should be adopted which will result in a just and reasonable disposition of the testator's property in accordance with the laws of descent and distribution. In Mississippi School for the Blind v. Armstrong, 216 Miss. 348, 62 So.2d 369 (1953), the Court stated that one of the rules for construing a will is "that in the absence of a clear intention to the contrary, that construction should be adopted which will result in a just and reasonable disposition of the property." 216 Miss. at 356, 62 So.2d at 371. And in Patterson v. Patterson, 150 Miss. 179, 116 So. 734 (1928), the Court said:
It is a cardinal rule of construction that a will should be so construed, if possible, as to effectuate the purpose of the testator, and in order to ascertain the purpose and intent of its maker, the whole text of the will must be taken into consideration; and where the language of the will is ambiguous and the intent of the maker obscure, a construction which will effect a just, natural, and reasonable disposition in accordance with the laws of descent and distribution is favored, unless there is a manifest intention to the contrary. 150 Miss. at 191, 116 So. at 735.
And again in In Re Boyd's Estate, 228 Miss. 526, 87 So.2d 902 (1956), the Court noted that there are numerous cases holding that the law favors that construction of a will which conforms most nearly to the general laws of inheritance. The authorities generally throughout the country adhere to the rule just stated. 95 C.J.S. Wills § 616, p. 840 (1957); 57 Am.Jur., Wills § 1125 (1948).
In case after case, and authority after authority, it is held as stated in 95 C.J.S., Wills § 617:
In construing an ambiguous will, in the absence of an expressed intention to the contrary, the court will favor the testator's children, and a provision for the support of the testator's children should receive the most favorable construction to accomplish the purpose intended. They, along with his widow ... are the primary objects of his bounty. In the absence of a clear expression of an intention to the contrary it will be presumed that the testator intended that all his children should take. The presumption is that they should take equally, and a construction leading to equality of distribution as between the testator's children will be preferred. The presumption in favor of such equality has been held to be so strong that all doubts will be resolved by it. 95 C.J.S. at 847-848.
For the foregoing reasons, I am compelled to disagree with the majority opinion.
SMITH and SUGG, JJ., join in this dissent.