352 So.2d 1324 (1977)
DEPOSIT GUARANTY NATIONAL BANK OF JACKSON, Mississippi, Duly Appointed, Qualified and Acting Executor of the Last Will and Testament of Edith Marshall Tucker (Mrs. J.W. Tucker), Deceased,
v.
FIRST NATIONAL BANK OF JACKSON, Mississippi, Trustee of the Trust of J.W. Tucker, Deceased.
No. 49844.
Supreme Court of Mississippi.
December 21, 1977.
*1325 Daniel, Coker, Horton, Bell & Dukes, Charles W. Witt, Boswell Stevens Hazard, Jackson, for appellant.
Wise, Carter, Child, Steen & Caraway, William O. Carter, Jr., William McDonald Nichols, Stennett, Wilkinson & Ward, James A. Peden, Jr., Anson B. Chunn, Jackson, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant, Deposit Guaranty National Bank, executor of the last will and testament of Edith Marshall Tucker (Mrs. J.W. Tucker), deceased, filed its bill of complaint in the Chancery Court of the First Judicial District of Hinds County against First National Bank of Jackson, Mississippi, trustee of the trust of J.W. Tucker, deceased. Appellee filed a cross-bill of complaint. Appellant brings this appeal from the lower court's decree on both claims. We reverse in part and render.
J.W. Tucker died on November 30, 1962. On March 13, 1954, Mr. Tucker executed a very lengthy and complicated will and testamentary trust. On July 20, 1960, he executed a lengthy codicil to his last will and testament. Certain changes were made in specific bequests and in the testamentary trust. In this case we are concerned only with Item VI of this codicil, which reads as follows:
In addition to the purposes set forth in said will and in addition to the payments called for by my said will and in this Codicil, I direct that out of the income of said trust the Trustee shall pay to my beloved wife for the duration of her life the sum of One Hundred and no/100 dollars ($100.00) per week, or so much thereof as she may desire. If my wife requires more in order to live in the manner to which she has been accustomed, then in the discretion of the Trustee solely, the Trustee may pay to her a greater sum than above set forth. The Trustee is authorized to use the corpus or principal or income of the trust to make these and the other payments set forth as necessary. The Trustee is also authorized to use of said corpus or the principal or income of said trust for the support, maintenance, health, medication, or medical treatment, hospitalization, or nursing care of any character for my said wife for her benefit, to the end that her health does not suffer on account of lack of funds. So long as my said wife shall live in her house, the Trustee shall pay all taxes, maintenance, and service bills thereon, such as electricity, water, gas and telephone. Upon the death of my wife, I direct that the Trustee pay all funeral expenses. The payments herein called for, along with those set forth in Paragraph VIII of my said Will, shall be made prior to the making of any other payments called for under the Trust set up in my Will or this Codicil. I hereby direct that my Executor make such payments to my said wife for her and for my daughter, Mrs. Louise Tucker Burgess, as *1326 are called for from the Trust herein until said trust arises and is vested with the corpus left to it.
Mrs. Tucker died on September 4, 1973, and appellant bank since then has administered her estate as executor of her last will and testament.
Appellant's bill of complaint alleges that under the testamentary trust set up by Mr. Tucker with appellee as trustee, the trust owes Mrs. Tucker's estate for certain items remaining unpaid. These items are:
1. The sum of $20,147.27 for medical, drug, hospital and nursing home expenses incurred by Mrs. Tucker prior to her death;
2. $100 per week for 52 weeks that was not paid by the trustee to Mrs. Tucker prior to her death;
3. The sum of $1,810.52 paid by Mrs. Tucker for expenses on her home prior to her death;
4. The sum of $1,403.50 paid by Mrs. Tucker's estate for her funeral expenses.
In its cross-bill of complaint, appellee asked for reimbursement of ad valorem taxes paid on Mrs. Tucker's home prior to her death in the sum of $2,527.77.
At the trial, stipulations were entered into evidence regarding the amounts of the items involved. It was stipulated by appellee that it did not pay and therefore owed the weekly payments of $100 each for a period of 52 weeks prior to Mrs. Tucker's death. Under this item, appellee contended that during that time, in lieu of the weekly payments to Mrs. Tucker, appellee paid certain medical, drug and nursing home expenses in the sum of $3,011.93, and contended that under this item it was entitled to a credit on the $5,200 admittedly owed.
After Mr. Tucker's death, Mrs. Tucker continued residing in the home in Jackson, Mississippi, until December 23, 1969. Undisputedly, for a long time prior to that date, she was in extremely bad health and required constant care and attention. On that date, she voluntarily entered a nursing home only a few doors from her place of abode. She took nothing with her to the nursing home other than bare necessities such as toothbrush and sleeping attire. The home and furnishings were left intact, were not sold or rented, and remained in that status until Mrs. Tucker's death on September 4, 1973. She was never able to leave the nursing home and return to her residence.
After trial, the chancellor found and decreed the following: (1) The trust was not obligated to pay the item of medical, hospital, and nursing expenses incurred and paid by Mrs. Tucker in the amount of $20,147.27; (2) The trustee owed the weekly payments it admittedly did not pay to Mrs. Tucker in the sum of $5,200. Under this item the court further found that in lieu of these payments and by agreement of the duly authorized representative of Mrs. Tucker, the trustee paid, medical, drug and nursing expenses in the sum of $3,011.93. The court deducted this sum from the amount admittedly owed for the weekly payments, which resulted in the sum of $2,188.07 owed as a balance by the trustee. (3) The chancellor found that when Mrs. Tucker went into the nursing home she did not continue to "live" in her residence and that the trustee, therefore, was not obligated to pay the items of expenses on the home from December 23, 1969, until her death on September 4, 1973. (4) The chancellor found that the trustee was not obligated to pay the funeral expenses incurred as a result of Mrs. Tucker's death, and gave as a reason that Mrs. Tucker's will under Item I stated: "I direct my executor to pay all my just debts probated against my estate, and all funeral expenses, such payments to be made as soon after my death as conveniently possible." It was the chancellor's opinion that this superseded the direction of Mr. Tucker to make these payments under Paragraph VI of the trust codicil.
The chancellor held that appellee was entitled to reimbursement of ad valorem taxes paid on the Tucker residence from the time Mrs. Tucker entered the nursing home until her death.
There are a number of cases setting out the duty of the courts in construing *1327 wills and trusts. The duty is the same whether by the lower court or this Court. The paramount and controlling consideration is to ascertain and give effect to the intention of the testator. In arriving at this intention, the Court is required to consider the entire instrument, sometimes said "from the four corners of the instrument." Where the instrument is susceptible of more than one construction, it is the duty of the Court to adopt that construction which is most consistent with the intention of the testator. The principal cases setting out this duty of the Court are: Seal v. Seal, 312 So.2d 19 (Miss. 1975); In re Granberry's Estate, 310 So.2d 708 (Miss. 1975); Carlisle v. Estate of Carlisle, 252 So.2d 894 (Miss. 1971); King v. King, 234 Miss. 862, 108 So.2d 220 (1959); Kyle v. Wood, 227 Miss. 717, 86 So.2d 881 (1956), and Brumfield v. Englesing, 202 Miss. 62, 30 So.2d 514 (1947).
We have studied carefully the record before this Court, including the wills and codicils of both Mr. and Mrs. Tucker. This study leaves us with the following positive conclusions regarding the various hereinbefore set out items in dispute.
ITEM 1. Under this item appellant requests reimbursement for medical, drug, hospital and nursing expenses personally paid by Mrs. Tucker. The chancellor denied this item and clearly was correct in doing so. It is undisputed that Mrs. Tucker had sufficient funds to make these payments. Paragraph VI of the codicil to Mr. Tucker's trust merely "authorized" the use of the corpus or the principal or the income of the trust for such payments. The trust was not called on for these payments and Mrs. Tucker obviously chose to make them herself.
ITEM 2. As hereinbefore stated, it was stipulated that the trust owed payments called for in Paragraph VI of $100 per week for 52 weeks, or a total of $5,200. It contended that it was entitled to a credit for medical, hospital and nursing expenses paid during that period in the sum of $3,011.93. The evidence showed that prior to these expense items being paid there was a discussion and tentative agreement between representatives of the appellee trustee and representatives of Mrs. Tucker. During this period of time, Mrs. Tucker's personal and business affairs were being handled by her faithful and devoted granddaughter, Mrs. Betty Tucker Duckworth. Mrs. Duckworth had been appointed conservator of Mrs. Tucker. Mrs. Duckworth testified that she, on occasions, discussed financial matters and the condition of the trust estate with representatives of appellee. Mrs. Duckworth agreed that she remembered that during the time in question, Mrs. Tucker authorized her to agree with appellee's representative, Mr. Alexander, to apply trust account funds to Mrs. Tucker's medical and nursing expenses in lieu of the $100 per week payments. We therefore agree with the chancellor on this item.
ITEM 3. This item gives the Court more trouble than the others. It requests reimbursement to Mrs. Tucker's estate for expenses such as maintenance and service paid on the Tucker residence from the time Mrs. Tucker entered the nursing home until her death. Here, under our duty as hereinbefore discussed, we have to ascertain the intentions of Mr. Tucker. The applicable part of Paragraph VI of the codicil to the trust provided "so long as my said wife shall live in her house, the trustee shall pay all taxes, maintenance and service bills thereon, such as electricity, water, gas and telephone."
The lower court used a strict construction of the word "live" and found that as Mrs. Tucker was actually staying in the nursing home a short distance away she was not "living" in her residence, and, therefore, was not entitled to these payments. We disagree with the lower court and hold that it was manifestly in error. A study of the will and trust agreement and particularly Paragraph VI shows a clear intention of Mr. Tucker to provide for a "home" for his wife so long as she lived. The house in question had been their residence for many, many years. He clearly intended it to remain so. Mrs. Tucker clearly showed her intentions to honor her husband's wishes by leaving the home and furnishings intact. *1328 Considering the length of time these two good people lived together in their residence, it is understandable why Mr. Tucker had this wish. His intention clearly was to "provide a home" for his wife whether she was sick elsewhere or not, and provided she did not abandon the home. This she clearly did not do. Therefore, we find that the chancellor clearly was in error on this item and that appellant was entitled to reimbursement.
ITEM 4. Paragraph VI of the trust codicil provided "upon the death of my wife I direct that the trustee pay all funeral expenses." This did not give the trustee any discretion. It was as direct as any part of the will or trust. The chancellor was in error in finding that the subsequent Item 1 of Mrs. Tucker's will cancelled this direct order of Mr. Tucker. In the first place, it is clear to any member of the bar that Item 1 in Mrs. Tucker's will is a "form" item that is placed at the outset of nearly every will. In the second place, it easily may be said that Mrs. Tucker wanted to guarantee that her funeral bills would be paid. It is fortunate that she did so as obviously appellee did not follow Mr. Tucker's direction and pay these bills. It is clear to this Court that Mr. Tucker wanted to and did direct the trustee of his testamentary trust to pay his wife's funeral bills. We cannot gather any other intention from the instrument.

CROSS-BILL OF COMPLAINT
A disposition of the cross-bill of complaint was in effect made by the Court's direction and opinion under Item 3 above. We shall not repeat that discussion but reiterate that it clearly was Mr. Tucker's intention for the trustee of his trust estate to pay the ad valorem taxes on the "home" until Mrs. Tucker died or she abandoned the premises.

CONCLUSION
A disposition of the case is now a matter of mathematics. Under the above findings, appellee owes appellant the sum of $5,402.08. The cause is reversed in part and judgment rendered here for the stated amount for appellant. The lower court's decree on the cross-bill of complaint of appellee is reversed and the cross-bill is dismissed.
REVERSED IN PART AND RENDERED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.