# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CT-01319-SCT

*PHILLIP MORROW*

*v.*

*JOEL MORROW, ADMINISTRATOR OF THE
ESTATES OF GOCHER MORROW, DECEASED,
AND REBA ELOISE SPARKS MORROW,
DECEASED, AND RONALD MORROW*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/23/2006 |
| TRIAL JUDGE: | HON. TALMADGE D. LITTLEJOHN |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CASEY LANGSTON LOTT |
| ATTORNEY FOR APPELLEES: | MICHAEL DAVID TAPSCOTT |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 10/17/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH
## NO. 2009-CT-01355-SCT

*PHILLIP MORROW*

*v.*

*JOEL MORROW, ADMINISTRATOR OF THE
ESTATES OF GOCHER MORROW, DECEASED,
AND REBA ELOISE SPARKS MORROW,
DECEASED, AND RONALD MORROW*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/15/2007 |
| TRIAL JUDGE: | HON. TALMADGE D. LITTLEJOHN |

COURT FROM WHICH APPEALED:  ITAWAMBA COUNTY CHANCERY
                                                COURT
ATTORNEY FOR APPELLANT:    CASEY LANGSTON LOTT
ATTORNEY FOR APPELLEES:    MICHAEL DAVID TAPSCOTT
NATURE OF THE CASE:        CIVIL - REAL PROPERTY
DISPOSITION:               DISMISSED - 10/17/2013
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     The Chancery Court of Itawamba County found that certain property once owned by Gocher and Reba Morrow (the Morrows) vested in their estates at the time of their deaths and passed by intestate succession in equal shares to their three sons, Phillip, Ronald, and Joel. Phillip appealed, arguing that he held a remainder interest and the property vested in him at his parents' death.  The Court of Appeals affirmed.  On review, we find that the chancery court erred by not quieting and confirming title to the property in Phillip, and we reverse the Court of Appeals and the chancery court.  We remand this case to the Chancery Court of Itawamba County to enter an order quieting and confirming title in Phillip Morrow.

                              **FACTS AND PROCEDURAL HISTORY**

¶2.     The Morrows owned approximately 200 hundred acres of land in Itawamba County, Mississippi (the property).[1]  In the late 1980s, Phillip moved from North Carolina back to

---

[1]The property is more particularly described as 160 acres, being the Southwest Quarter of Section 5, Township 8 South, Range 8 East; 40 acres more or less, the same being all of the Northwest Quarter of Section 8, Township 8 South, Range 8 East, lying North of the Old Twenty Mile Creek; one acre in the Northwest Quarter of the Southeast Quarter of Section 5, Township 8 South, Range 8 East; all located in Itawamba County, Mississippi.

Itawamba County to help his father farm the property. Phillip testified that he moved back to Mississippi after his father extended an offer to all three sons to give them the land if they would move home and help farm. Phillip further testified that he was the only son who took his father up on the offer.[2] An undated letter from Ronald to the Morrows was entered into evidence and supports Phillip's testimony in relevant part as follows:

> There have been times when Dad has spoken of the [sic] how the inheritance of the farm might be pasted [sic] on. When he has spoken to me about it, there was always the implication that I would have to move back, to live near you and work on the farm just as Phil has done. While living near you and having a close relationship with my parents is desirable, I was never able to see how I could do this and still make a decent living . . . . Dad, I do not feel that brothers should have to compete for their inheritance, this drives us apart, not closer together. I do love both of you and will do everything I can to help you. But that love can not [sic] be bought with the price of the farm, inheritance or anything else.

¶3. In 1993, the Morrows deeded the property to Phillip without reservation (Deed 1). Phillip testified that, three years later, in 1996, he and his parents decided that Phillip would deed the property back to his parents and that they would in turn deed the property back to Phillip, reserving a life estate for themselves. Phillip testified that this decision was made to allow the Morrows to file for homestead exemption on the property, which would reduce the property taxes, and ensure that the Morrows would continue to have a place to live if something should happen to Phillip. Phillip and his parents hired a local attorney to prepare the deeds.[3]

---

[2]Ronald moved to Tupelo for about a month before deciding he did not want to help farm the land.

[3]The 1996 deeds were both prepared and acknowledged by Nell May, an attorney who was not called as a witness at trial and is now deceased.

¶4.     The three deeds were entered into evidence by stipulation of the parties. The dispute in this case arises from the dates the 1996 deeds were executed, acknowledged, and ultimately recorded. The land records show that the Morrows executed a deed on *March* 23, 1996, conveying the property to Phillip with the reservation of a life estate for themselves (Deed 2). The acknowledgment date reflected in Deed 2, March 23, included a typed "March" and a handwritten "23." However, Deed 2 was not recorded until *April* 23, 1996.

¶5.     The land records also reflect that Phillip executed a warranty deed, conveying the property back to his parents, on *April* 22, 1996 (Deed 3). Deed 3 reflected a typed acknowledgment date of "March," which had been crossed out and replaced with a handwritten "April," and a handwritten "22." Deed 3 was recorded on *April* 22, 1996, one day before Deed 2 was recorded. Both deeds were notarized and contained the acknowledgments that the deeds had been "signed, sealed and delivered" on the dates reflected in the acknowledgments. Phillip alleges that the notary clearly intended to cross out the typed "March" and handwrite "April" on both deeds, but failed to do so on Deed 2. This resulted in Deed 2 appearing to have been executed a month before Deed 3, although it was recorded a day after Deed 3. The three recorded deeds reflect the following chronology:

October 6, 1993     The Morrows convey the property to Phillip in fee simple without reservation (Deed 1).

March 23, 1996      The Morrows execute a deed conveying the property to Phillip, reserving a life estate for themselves (Deed 2).

April 22, 1996      Phillip executes a deed conveying the property to the Morrows (Deed 3).

4

April 22, 1996       Deed 3 is recorded.

April 23, 1996       Deed 2 is recorded.

¶6. The Morrows died intestate in 1999 and 2000. Shortly thereafter, Phillip filed an action against his brothers, Ronald and Joel, to quiet and confirm title and his sole ownership of the property. Alternatively, Phillip sought to impose an equitable lien on the property should he not be granted sole ownership. The chancery court found that the dates reflected in the acknowledgments were controlling, making Phillip's deed to his parents the last deed executed. Therefore, the chancery court found that the property was vested in the Morrows at the time of their death and passed in equal parts to all three brothers. The chancery court also found that Phillip was not entitled to an equitable lien on the property.

¶7. Phillip appealed, arguing that Deeds 2 and 3 became effective on the dates they were recorded, not the dates reflected in the acknowledgments; that Deed 2 should be reformed to show an execution date of April 23 instead of March 23; that title to the property should be vested in him pursuant to the doctrine of after-acquired property (DAAP); and that, alternatively, he is entitled to an equitable lien on the property. We assigned the case to the Court of Appeals, which found that the chancery court did not err because Deeds 2 and 3 became effective on the dates reflected in the acknowledgments, not the date they were recorded; that Phillip had failed to properly plead the DAAP and, therefore, could not rely on the doctrine; that the DAAP would fail on the merits if it was applied to the case; and that Phillip was not entitled to an equitable lien.

¶8. We granted certiorari. We find that Deeds 2 and 3 were presumptively delivered, and therefore became effective to transfer title, on the dates they were recorded, rather than on

5

the dates reflected in the acknowledgments. Sufficient evidence was not presented to rebut that presumption. Therefore, we hold that title to the property passed to the Morrows on April 22, 1993, that title to the property passed to Phillip, with reservation of a life estate, on April 23, 1996, and that title vested in Phillip Morrow at the time of Reba Morrow's death in 2000. As this issue is dispositive, we do not address Phillip's remaining claims.

## DISCUSSION

¶9.     A chancellor's findings are subject to an abuse-of-discretion standard of review, and we will not disturb the "factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard."[4] "However, questions of law will be reviewed *de novo*."[5]

¶10.    The basic facts in this case are not disputed – the parties agree that the Morrows conveyed the property to Phillip without reservation in 1993; that the Morrows reconveyed the property to Phillip, reserving a life estate for themselves via Deed 2, which was acknowledged on March 23, 1996, and recorded on April 23, 1996; and that Phillip conveyed the property back to the Morrows via Deed 3, which was acknowledged on April 22, 1996, and also recorded on April 22. The chancellor applied Mississippi law to the undisputed facts in reaching his decision. Therefore, we review the chancery court's order *de novo*.

¶11.    Phillip argues that the chancery court erred by relying on Mississippi Code Section 89-5-13 because the statute is inapplicable to this case. Section 89-5-13 is a statute which

---

[4]*Carlisle v. Allen*, 40 So. 3d 1252, 1256 (Miss. 2010) (citations omitted).

[5]*Id.* (citations omitted).

6

operates (1) to cure a defective acknowledgment in a deed recorded for seven or more years; and (2) to recognize a deed recorded for ten or more years without an acknowledgment as properly acknowledged. Section 89-5-13 is a curative statute for documents containing a defective acknowledgment and "otherwise has no bearing on a deed's validity."[6]

¶12. Although the chancery court recognized in its bench opinion that no party had questioned the authenticity of the acknowledgments in the deeds, the court found that, because both Deed 2 and 3 had been recorded for more than seven years, Section 89-5-13 applied to validate the acknowledgments, creating a presumption that the deeds were executed as reflected on their faces. The chancery court further found that no evidence had been presented to rebut the presumption that the acknowledgments were valid; therefore, the chancery court held that the deeds became effective on the dates they were signed and acknowledged as reflected in the deeds. Although the chancellor did not address the delivery of the deeds apart from their execution, the Court of Appeals held that the chancery court did not err in "relating back" the delivery dates of Deeds 2 and 3 to the dates reflected in the acknowledgment by the notary.

¶13. Mississippi law is clear – a deed is not effective to transfer title unless and until it is delivered to the grantee.[7] Delivery has been defined as "a transfer of [a deed] from the grantor to the grantee or his agent or to some third person for the grantee's use, in such manner as to deprive the grantor of the right to recall it at his option, and with *intent to*

---

[6]***Greenlee v. Mitchell***, 607 So. 2d 97, 106 (Miss. 1992) (citations omitted) (interpreting an earlier version of the statute). *See also* Miss. Code Ann. § 89-5-13 (Rev. 2011).

[7]***In re Estate of Hardy***, 910 So. 2d 1052, 1054 (Miss. 2005).

7

*convey title*."[8]  "The intent to deliver a deed must be mutual with the intent to accept the deed in order for the delivery and acceptance to be complete."[9]  And before delivery, a deed is without force or effect and is merely a "scroll under control of the grantor who is free to withdraw it, destroy it, or complete its execution by delivery."[10]  Indeed, this Court has held that a deed which was undisputedly "signed and acknowledged," with an acknowledgment reciting "that the same was 'signed, sealed and delivered,'" but was in fact never delivered, "never became effective."[11]  Likewise, we have held that a deed that was executed and recorded, but which the grantee declined to accept upon attempted delivery, was not delivered and was void.[12]  Therefore, even if a deed is properly acknowledged, the deed does not become effective to transfer title until delivery and acceptance are completed.

¶14.    The chancery court found that Section 89-5-13 acted "to put a seal upon the validity of those acknowledgments and *no one can complain of them*, not that anybody has . . . " We agree with the chancellor that a "properly acknowledged deed is presumptively authentic . . .,"[13] but that presumption is not conclusive and does not result in a finding that "no one can complain of."  Indeed, it is a presumption that can be rebutted.[14]  The question at issue here

---

[8]*Id.* at 1054-55 (citation omitted) (emphasis added).

[9]*Id.* at 1055 (citation omitted).

[10]*Id.* (citation omitted).

[11]***Grubbs v. Everett***, 111 So. 2d 923, 923-24 (Miss. 1959).

[12]***Martin v. Adams***, 62 So. 2d 328, 277-78 (Miss. 1953).

[13]***Thompson v. Shell Western E & P Inc.***, 607 So. 2d 37, 40 (Miss. 1992).

[14]***In re Estate of Hardy***, 910 So. 2d 1052; ***Estate of Dykes v. Estate of Williams***, 864 So. 2d 926 (Miss. 2003).

is not the validity of the deed - that is, no one questions whether Deed 2 bears the true signatures of the Morrows. Rather, the only question presented is when Deed 2 was effective to transfer title. We find that the chancery court erred in relying on Section 89-5-13 to find that Deeds 2 and 3 became effective on the dates reflected in the acknowledgments, without addressing Phillip's uncontradicted testimony of the intent of the parties or considering when the deeds were delivered and accepted.

¶15. It is well-settled that "the recording of a deed raises a presumption of its delivery."[15] Joel and Ronald argue that the recording of the deeds only raises a presumption that the deeds were delivered *at some point*, not that the deeds were delivered on the dates that they were recorded, and they urge us to find that the dates the deeds were delivered are the dates that they were acknowledged.

¶16. Phillip testified that he did not know which deed was executed first. However, Phillip did testify that it was his intent to deed the property to his parents in order for them to reserve a life estate in the property for themselves and reconvey it to him. Phillip further testified that he would not have deeded the property back to his parents if they were not going to reconvey it to him. Phillip's testimony rebuts any presumption that Deed 2 was delivered or accepted by him prior to the recording of Deed 3.

¶17. In this case, we find a presumption that Deed 3 became effective on April 22 and Deed 2 became effective on April 23, the dates they were recorded. No evidence was offered to rebut these presumptions other than the acknowledgments reflected in the deeds, which, in the face of evidence to the contrary, does not establish the dates that the deeds were

---

[15]*In re Estate of Hardy*, 910 So. 2d at 1054 (citation omitted).

delivered and accepted. Therefore, we find that Deed 3 became effective the day before Deed 2, the dates the deeds were recorded, and that the Morrows successfully conveyed the property to Phillip on April 23, 1996, reserving a life estate unto themselves, a day after Phillip conveyed the property to the Morrows. As such, title to the property vested in Phillip without restriction at the time of Reba Morrow's death. As former Chief Justice Hawkins astutely observed more than twenty-five years ago:

> Cases involving the delivery of deeds, and mistake, involve a myriad of different factual situations, as diverse as the mind of man, and we are constrained to conclude this opinion with the cliche that each case must be evaluated on its peculiar facts.[16]

## CONCLUSION

¶18. For the reasons discussed above, the judgments of the Chancery Court of Itawamba County and the Court of Appeals are reversed. We remand this case to the chancery court with instructions to enter an order quieting and confirming title in Phillip Morrow. Because we find that title should be quieted and confirmed in Phillip Morrow, we dismiss the appeal from the judgment denying Phillip Morrow's claim for an equitable lien on the property as moot.

¶19. **AS TO 2009-CT-01319-SCT: REVERSED AND REMANDED. AS TO 2009-CT-01355-SCT: DISMISSED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

---

[16]***Odom v. Forbes***, 500 So. 2d 997, 1001 (Miss. 1987).

10