## FANT ET AL *v.* WILLIAMS.

[79 South. 343, Division B.]

1. ADVERSE POSSESSION. *Acquisition of title. Extent.*
   Under our statute and the holdings of the supreme court, possession of land for ten years in accordance with the demands of the statute confers such title upon the occupant as can be used defensively or as a basis of a bill to confirm title. It is such title as will support an action in court.

2. ADVERSE POSSESSION. *Continuity.*
   Any inquiry as to the continuity of the possession of land claimed to be adverse, is pertinent only, in the event the adverse possession has not been continuous for the required number of years necessary to confer title.

3. ADVERSE POSSESSION. *Divestiture of title. Abandonment.*
   Land acquired by adverse possession cannot be lost by mere abandonment. Where a good title is acquired by adverse possession it cannot be divested except by deed in accordance with the statute or by such a state of facts as would constitute an estoppel.

APPEAL from the circuit court of Tunica county.
HON. W. A. ALCORN, JR., Judge.

Ejectment by Elizabeth Hull Fant and others against John C. Williams. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Calvin Perkins,* for appellants.

*Montgomery & Montomery,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellants as plaintiffs in the court below instituted this action in ejectment against appellee, John C. Williams, to recover two small pieces of land, one tract

containing one and three tenths acres and the other two and seven tenths acres particularly described in the declaration by metes and bounds, and further shown by a plat or diagram attached to the agreed statement of facts. The cause was submitted upon an agreed statement and judgment entered in favor of the defendant, and from this judgment appellants appeal. The prominent facts, as agreed to, are that prior to 1881 the land in controversy was owned by Judge A. M. Clayton. On November 4, 1881, Judge Clayton conveyed to Humphrey Starks the northeast quarter of the southeast quarter of section 5, township 6, range 11 west; and in taking possession of said forty acres Starks, in good faith, took possession of the two small tracts of land involved in this suit, believing that they were within the calls of the deed executed to him by Judge Clayton, and that for more than twenty years next preceeding the death of Humphrey Starks he had been continuously in the actual, open, and visible possession of the said forty acres and the tracts adjoining the same here sued for, cultivating it, claiming it, and believing that he owned it. Starks died January 12, 1911, still in possession of the premises, and thereafter his heirs at law continued in possession until 1912, when certain of the heirs filed their bill in the chancery court for a sale of the northeast quarter of the southeast quarter of said section 5 and for a partition or division of the proceeds amongst all the heirs. Embraced in the bill were other lands owned by Humphrey Starks, but the two tracts of land here sued for were not referred to or described in the bill. The court decreed a sale of the east half of the southeast quarter of scetion 5, township 5, range 11 west, appointed a commissioner to make the sale, and at commissioner's sale appellee, John C. Williams, became the purchaser and the sale to him was duly confirmed and a commissioner's deed executed. On January 1, 1913, after the sale had been

confirmed and the proceeds thereof distributed among the heirs of Humphrey Starks, appellee 'Williams went into possession of the said northeast quarter of the southeast quarter of section 5 under the commissioner's deed and now claims the title to the two small tracts of land involved in this suit under and by virtue of his said commissioner's deed, claiming that the same, by adverse possession, now constitute a part of the said northeast quarter of the southeast quarter. In April and May, 1913, five of the heirs of Humphrey Starks conveyed their interest in the two tracts of land sued for to the mother of the plaintiffs in this suit, who claimed an undivided five-sevenths interest in the premises under and by virtue of. these deeds from the Humphrey Starks heirs. A diagram of the northeast quarter of the southeast quarter of section 5 shows that tract A, containing one and three tenths acres, lies to the west of said forty acres, and as a matter of fact is situated in the northwest quarter of the southeast quarter of said section, while tract B, containing two and seven-tenths acres, lies to the north of the Humphrey Starks forty and is in fact situated in the southeast quarter of the northeast quarter of said section. The deeds in 1913 from the five heirs at .law of Humphrey Starks were made to Mary L. Hull, a daughter of Judge Clayton and one of the devises in the last will and testament of Judge Clayton, while plaintiffs comprised all of the children, grandchildren, or descendants of Mary L. Hull. The agreed statement stipulates that:

It "shall constitute all of the evidence, both for the plaintiffs and the defendant, and shall be taken as the true facts, and all of the facts with reference to the question at issue herein."

The facts being agreed upon, this appeal presents purely law questions. Both parties claim through Humphrey Starks as a common source of title. Appellants in the agreed statement concede that, as against

Judge Clayton, Humphrey Starks acquired title by adverse possession, and so conceding, Mary L. Hull, devisee of Judge Clayton, purchased from five of the seven heirs of Humphrey Starks all right, title, and interest which they owned in the premises. But the defendant contends that the premises in dispute were delivered over by the heirs of Humphrey Starks to appellee under and by virtue of his commissioner's deed, thereby conceding that both tracts of land should be regarded within the calls of the commissioner's deed and a portion of the estate purchased by appellee at judicial sale; that a purchaser at judicial sale may tack his possession to that of the person whose land is sold; and that the heirs of Humphrey Starks having surrendered possession of the lands in controversy, together with the forty acres within the calls of the commissioner's deed, there was then such privity existing between the heirs of Humphrey Starks and the purchaser at commissioner's sale as to render the commissioner's deed as effective in conveying the title and possession of the lands in controversy as if the heirs of Humphrey Starks had executed a deed in writing thereto. Appellee relies upon *Crowder* v. *Neal,* 100 Miss. 730, 57 So. 1; *Metcalfe* v. *McCutchen,* 60 Miss. 145; *Jones* v. *Gaddis,* 67 Miss. 768, 7 So. 489.

We do not regard either of the cases mentioned as decisive of the question now presented. These cases support the title of Humphrey Starks, but the latter's title is not questioned. On the contrary, both parties concede that Humphrey Starks acquired title by adverse possession and that his title so acquired descended to his heirs at law. The agreed statement settles expressly Starks' ownership, and the pleadings and agreed statement show that both parties now claim through the heirs of Humphrey Starks. Appellants, as plaintiffs in the court below, have deeds to an undivided five-sevenths interest, and these deeds operated effectually to convey to appellants an undivided five-sevenths in-

terest unless it be that appellee Williams acquired Humphrey Starks's title at commissioner's sale. Was the land in controversy then sold and conveyed to appellee at commissioner's sale?

In *Wells* v. *Ellabee,* 93 Miss. 268, 46 So. 497, our court expressly ruled that a purchaser at commissioner's sale "is a purchaser in invitum, and the doctrine of caveat emptor applies in its full force," and that a bill to reform a commissioner's deed "cannot be entertained." It is agreed that the bill for partition and sale of the Humphrey Starks land did not in terms describe or refer to the lands involved in this ejectment suit, and there is no allegation, agreement, or showing that appellee puchased at judicial sale the northeast quarter of the southeast quarter of section 5 under any representation or belief that the two small adjoining tracts of land in question were situated in said forty or were a part and parcel thereof. On the contrary, the pleadings, notice of sale, decree, and commissioner's deed describe appellee's land according to the government survey, and only the lands actually within the calls of the commissioner's deed were conveyed to appellee. The agreed statement does reflect that appellee took possession according to the old occupation lines, and that the heirs of Humphrey Starks actually surrendered possession of the land in controversy, and that appellee actually took possession thereof and has since occupied the same. It might be conceded for the purposes of this opinion that appellee in good faith believed that the two tracts sued for were within the calls of his commissioner's deed. What appellee believed about the transaction is not controlling. The estate which he purchased at judicial sale must be determined by pleadings, decree, and commissioner's deed. Appellee has only been in possession since January 1, 1913, and this suit was filed October 18, 1916. We are not here presented with the question whether a purchaser of land at judicial sale may tack

his possession to that of the person whose land is sold by the court. This is not an effort to tack the possession of appellee to the possession of Humphrey Starks or the heirs of Humphrey Starks in an effort to hold the title as against the original owner of the record title—in this case, the devisees of Judge Clayton. This is a case where the possession of Humphrey Starks had continued so long as to confer upon him a good title by adverse possession.

Under our statute and previous holdings of our court, possession for ten years in accordance with the demands of the statute confers such title upon the occupant as can be used defensively or as a basis of a bill to confirm title. It is such title that will support an action in court. This being so, we next approach a consideration of the question as to how a title once acquired by adverse possession may be divested, the particular inquiry being as to whether the title of the Humphrey Starks heirs was divested by a sale of Starks' lands in the chancery court.

In *School District No. 4* v. *Benson*, 31 Me. 381, 52 Am. Dec. 618, the court said:

"No doubt a disseisor may abandon the land, or surrender his possession by parol, to the disseisee, at any time before his disseisin has ripened into a title, and thus put an entire end to his claim. His declarations are admissible in evidence to show the character of his seisin, whether he holds adversely or in subordination to the legal title. But the title obtained by a disseisin so long continued as to take away the right of entry and bar an action for the land by limitation, cannot be conveyed by a parol abandonment or relinquishment; it must be transferred by deed. One having such title may go out of possession, declaring he abandons it to the former owner, and intending never again to make any claim to the land, and so may the person who holds an undisputed title by deed; but the law does not preclude them

118 Miss.—28.

from reclaiming what they have abandoned in a manner not legally binding upon them. A parol conveyance of lands creates nothing more than an estate or lease at will. Stat. c. 91, section 30."

In *Parham* v. *Dedman*, 66 Ark. 26, 48 S. W. 673, the court, by HUGHES, J., observed:

"It is also contended that in 1893 Parham said to one of the appellees that since he had lost the suit with Marshall, if the appellees would let his tenant occupy the house till the end of the year, he would surrender possession of the house to them, and pay them rent for it; that he thereby acknowledged their right— attorned to them—and is estopped to dispute their title. But the title of Parham had then been completed by lapse of time, and adverse possession for several years more than seven, and his title was not devested by this agreement. There appears no consideration for it, and the title to land cannot be transferred in this way. There was no writing, and therefore the agreement, so far as the transfer of title is concerned, was within the statute of frauds."

In *Todd* v. *Kauffman*, 19 D. C. 304, the supreme court of the district of Columbia, in discussing the propriety of a certain instruction given in that case, said:

"The claim was that the fence having disappeared from the property it was abandoned, and that Kauffman also omitted it from his will, although his heirs, I believe, that after his death claimed it, and filed a bill for partition. It is admitted that he allowed it to be sold for taxes, but the answer to that on the part of the defense is that, if a title be once proved, there is no such thing as parting with the title to corporal property by abandoning it."

In *Frick* v. *Simon*, 75 Cal. 337, 17 Pac. 439, 7 Am. St. Rep. 177, the California court on a similar question said:

"An offer to buy out a hostile claim in 1876 or 1883 could not invalidate the title of plaintiff or her pred-

ecessor. *Furlong* v. *Cooney,* 72 Cal. 322 (14 Pac. 12). Here is no question of estoppel. Having acquired the title by adverse possession, plaintiff, while she remained in possession, could be divested of such title only by conveyance in writing."

In *Campbell et al* v. *Bates,* 143 Ala. 338, 39 So. 144, paragraph 7 of the headnotes reflects the holding of the Alabama court as follows:

"7. Same— Acquisition of Title—Divestment.— Where the possession of plaintiff's grantor and the succeeding possession of plaintiff under the deed from his grantor amount together to ten years, no subsequent adverse possession under color of title for a less period than ten years will divest plaintiff's title."

The authorities are agreed that any inquiry as to the continuity of possession claimed to be adverse is pertinent only in event the adverse possession has not been continuous for the required number of years, necessary to confer title. Our court dealt with this question in *Geohegan* v. *Marshall,* 66 Miss. 676, 6 So. 502, an ejectment suit in which the court condemned certain instructions given for the plaintiff. The defendant there relied upon title by adverse possession, but the plaintiff's instructions told the jury that they must believe the defendant had been in the actual adverse possession of this land for "ten years next before the commencement of this suit." Our court by COOPER, J., observed:

"If the defendant was in adverse possession of the lands in controversy for the period of time necessary to create title, it is immaterial whether that possession immediately preceded the institution of plaintiff's action. It is sufficient if at any time there was such possession under a parol gift, for its effect would be to transfer the title of the donor to the possessor, who would thus become owner, and a vacancy in the possession thereafter intervening would not affect the

perfect title already vested. The question involved is whether the defendant is the owner of the land by adverse possession, and not when he became such owner."

See, also, on this point, *Off* v. *Heinrichs,* 124 Wis. 440, 102 N. W. 904.

We find therefore that the authorities are in accord that land acquired by adverse possession cannot be lost by mere abandonment. In addition to the authorities quoted from, we refer to the well-considered case of *Tarver* v. *Deppen,* 132 Ga. 798, 65 S. E. 177, 24 L. R. A. (N. S.) 1161, as also the case note on the "effect of abandonment on title to real property acquired by adverse possession," and 2 C. J., pp. 256 and 257. There is no question of estoppel presented in the present suit. A case might be presented where the owner of a title acquired by adverse possession would be estopped to claim or rely upon the same. But the necessary elements of estoppel would have to exist. As stated by the supreme court of Pennsylvania in *Byers* v. *Sheplar* (Pa.), 7 Atl. 182, the owner of such title "could not, by a loose conversation, talk away his right; for it would fall within the statute of frauds and prejuries, so that even his definite parol agreement would not affect a divestiture of that title." So in the present case we are impressed with the view that the good title of Humphrey Starks could not be divested except by deed in accordance with the statute or by such a state of facts as would constitute an estoppel. The views we entertain lead necessarily to the conclusion that the learned circuit court erred in rendering a judgment in favor of appellee, and this judgment will be reversed, and judgment entered here in favor of appellants.

*Reversed and Judgment here.*