# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-IA-00605-SCT

*T & W HOMES ETC, LLC*

*v.*

*JAMES KENDALL CROTWELL AND TERRY CROTWELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/11/2013 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| TRIAL COURT ATTORNEYS: | RICHARD MANNING LINGLE |
| | SEAN ALBERT SOUTHERN |
| | MICHAEL VINCENT BERNIER |
| | MICHAEL ALAN JEDYNAK |
| | THOMAS D. LEE |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS D. LEE |
| ATTORNEY FOR APPELLEES: | RICHARD MANNING LINGLE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED AND REMANDED - 08/24/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KITCHENS AND CHAMBERLIN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In 1973, Gilbert Lum conveyed a forty-acre tract of land by warranty deed to his daughter, Lucille Crotwell, reserving unto himself a life estate in the lands and all mineral interests owned by him. The deed recites receipt of good and valuable consideration and was filed of record. No words of inheritance were contained in the deed. A quarter of a century later, Lum attempted to reconvey one acre of the same forty-acre tract to Richard Prestage.

This interlocutory appeal involves an action by Crotwell's heirs[1] against Prestage's successors in title. The chancellor found that Lum had reserved a life estate in the land and minerals only and that he could have conveyed his reserved life estate, but that reading the conveyance as retaining the right to reconvey title in fee simple was repugnant to the granting clause in the conveyance to Crotwell. The Chancery Court of Scott County granted summary judgment to the Crotwells on this issue only. T&W Homes filed this interlocutory appeal.[2]

## FACTS AND PROCEDURAL HISTORY

¶2.     The facts are not in dispute. On March 13, 1973, Gilbert Lum conveyed, by warranty deed, a forty-acre tract of land to his daughter, Lucille Crotwell. The deed reads:

> In consideration of ($10.00) ten and no/100 dollars and other good and valuable consideration, of which is hereby acknowledged, I, Gilbert Lum [address] convey and warrant to Lucille Lum Crotwell [address] the land described as follows . . . . towitt [sic]: the west half of S 1/2 of SE 1/4 of Section 19, Township 7 North, Range 6 East. Containing 40 acres more or less.

> All above des[cribed] land subject to all prior oil, gas, and mineral rights, and sales  and leases as shown in records of Chancery Clerk's Office in Forest, Miss.

> Grantor, however, does hereby expressly RESERVE unto himself a life estate in the foregoing lands coupled with a full and absolute disposition to be exercised by him as though he were the fee simple owner thereof[] also RESERVING unto himself all mineral interest owned by him in said lands for his lifetime.

---

[1]Lucille Crotwell died intestate in 2010. Her sole heirs at-law, her husband and two sons, executed a quit-claim deed conveying the property to her two sons, Terry and James Crotwell, as joint tenants with full rights of survivorship.

[2]Claims of adverse possession and unjust enrichment remain pending in the chancery court.

The deed was signed by Lum, who personally appeared before a notary public and "acknowledged that he signed and delivered the foregoing instrument on the day and year therein mentioned."

¶3.    On June 8, 1998, Lum executed a warranty deed for one acre of the forty-acre tract to Richard Prestage, subject to his life estate for the mineral interests of that one acre, in addition to excepting all prior mineral rights.[3] By special warranty deed, Prestage subsequently deeded the same property from himself to himself and his wife, Sheri, as an estate by the entirety with full rights of survivorship.[4] The Prestages then executed a deed of trust in favor of American Title Company, Inc., as trustee for Hurricane Mortgage Company, Inc. This deed of trust ultimately was assigned to HSBC Bank, USA, N.A., as trustee for Wells Fargo Asset Securities Corporation Home Equity-Backed Certificates. On August 10, 2011, Emily Courteau, as Substituted Trustee, conducted a foreclosure sale of this deed of trust. T&W Homes, Etc, LLC ("T&W") was the successful bidder and received a Substitute Trustee's Deed.

¶4.    On December 13, 2011, the Crotwells filed a complaint to confirm title, remove cloud on the title, and for ejectment. The parties filed competing motions for summary judgment. The chancellor found that Lum had reserved a life estate only, and that a reservation of the

---

[3] Although not controlling today's disposition, Lum again attempted to reserve the future conveyance of property by limiting Prestage's unlimited power to sell the property, prior to giving first right of refusal to Prestage's siblings still living at the time of Lum's death. This restrictive clause would be repugnant to granting fee simple title to the property.

[4] *See Special Warranty Deed*, Black's Law Dictionary (10th ed. 2014) ("A deed in which the grantor covenants to defend the title against only those claims and demands of the grantor and those claiming by and under the grantor.").

3

right to reconvey fee simple title was "an illegal and void restraint upon alienation and repugnant to the granting clause of the deed." T&W filed an interlocutory appeal as to this one issue.

## ISSUE

¶5.     The parties present the issue on appeal as whether the reservation by Lum of a life estate "coupled with a full and absolute disposition to be exercised by him as though he were the fee simple owner" was an illegal and void restraint upon alienation and repugnant to the granting clause of the deed.

## ANALYSIS

¶6.     Questions of law are reviewed *de novo*. **Morrow v. Morrow**, 129 So. 3d 142, 146 (Miss. 2013).

¶7.     T&W argues that deeds containing reservations of life estates with power to reconvey fee simple title are recognized in other states. Each case cited by T&W is not only foreign to Mississippi law, but is factually distinguishable. For instance, in **Jamieson v. Jamieson**, 912 S.W.2d 602, 604 (Mo. Ct. App. 1995), a widower reserved a life estate with power to "sell, rent, lease, mortgage, or otherwise dispose of said property, during his natural lifetime. Then the remainder in fee to" his children. After executing the deed, the widower remarried and executed a new deed conveying the property to his new wife. *Id.* In the widower's initial deed, there was no present conveyance; there was no mention of consideration; and the conveyance specified that the children were remaindermen. The Missouri Court of Appeals upheld the second conveyance, finding that the first deed was a mere "gift to the

4

remaindermen," and thus the widower retained a right to revoke. *Id.* at 605. In contrast, the deed at issue in the case *sub judice* effected a then-present conveyance by general warranty deed[5] of real property owned by Lum. After acknowledging receipt of valuable consideration—thus taking this case outside the realm of *inter vivos* and testamentary gifts—Lum "[c]onvey[ed] and warrant[ed]" the forty acres described in the deed to Crotwell. The deed was signed, delivered, notarized, and filed—putting the world on notice of the transaction. Crotwell was the grantee identified in the deed. She was described in the deed as a contingent remainderman, as posited by the dissent. *See* Diss. Op. at ¶ 20.[6] The words "remainder" or "remainderman" are not in the deed *sub judice. Contra **Jamieson***, 912 S.W.2d at 604-05.

¶8.  In ***Harman v. Hurst***, 153 A. 24, 26 (Md. 1931), a father granted property to his daughter, "her heirs and assigns, in fee simple, subject and reserving to myself the right to mortgage or sell." The father then conveyed the property to his attorney, and his attorney reconveyed the property to the father. *Id.* at 25. The Maryland Court of Appeals upheld the latter conveyances, in part because the deed did not evidence that the daughter had paid any consideration for the initial conveyance. *Id.* at 25-26 ("A slight consideration may support

---

[5]*See Warranty Deed*, Black's Law Dictionary (10th ed. 2014) ("A deed containing one or more covenants of title; esp., a deed that expressly guarantees the grantor's good, clear title and that contains covenants concerning the quality of title, including warranties of seisin, quiet enjoyment, right to convey, freedom from encumbrances, and defense of title against all claims. — Also termed *general warranty deed*; *full-covenant-and-warranty deed*.").

[6] "It is the duty of the Court to construe the instrument as it is written." ***Westbrook v. Ball***, 222 Miss. 788, 791, 77 So. 2d 274, 275 (1955).

an agreement made by a parent with a child; but the consideration, however[] slight, must be performed."). The Lum-Crotwell deed reads that consideration was exchanged. On his oath, Lum acknowledged receipt of consideration in the notarized deed, rendering **Harmon** inapposite and unpersuasive.

¶9.     Finally, T&W asks this Court to consider **Kyle v. Wood**, 86 So. 2d 881 (Miss. 1956). While **Kyle** remains good law for the principles of wills and testaments, it offers no guidance to today's case.[7]

¶10.    In **Kyle**, J.A. Wood's 1948 will contained the following provision:

> I will and give all my property of every kind wherever located to my beloved wife, Mrs. Molly Wood, to have [and] to hold during her lifetime to use, sell and dispose of as she sees fit; and at her death, then such property left to my said wife by me is to be given to my nephew, by marriage, Arthur Kyle.

**Id.** at 882. J.A. Wood died in 1952. **Id.** Later that year, Molly conveyed the property to another.[8] After her death,[9] nephew Kyle filed suit against her grantees, complaining that the grant of power in J.A. Wood's will to dispose was invalid. **Id.** at 882-83. This Court found Molly's conveyance valid:

> It thus appears that the rule is well settled by our own decisions, that where a testator gives an estate for life only, with the added power to the life tenant to convey the estate absolutely, the life tenant may defeat the estate of the remainderman under the will by the exercise of the power of disposal during his lifetime.

---

[7] **Kyle** does not invoke the doctrine of *stare decisis*, for neither the facts nor law are similar to the case *sub judice*.

[8] Molly also executed a corrected warranty deed in 1953 "for the purpose of correcting an error in the description of the land which she had undertaken to convey." **Id.** at 883.

[9] "The record does not show the exact date of Mrs. Wood's death." **Id.**

***Id.*** at 885.

¶11. Today's case is governed by the law of deeds, not the law of wills and testaments.[10] To write a learned treatise on each subject is not the endeavor of this opinion, which would be the result were we to discuss exhaustively the voluminous distinctions between these intricate and nuanced bodies of law. Suffice to say, we offer only a smattering of distinguishing features. A grantor of a deed must deliver it before it becomes effective.[11] On the other hand, to convey real property by will, the testator devises[12] the real property upon death. And while wills are revocable by the testator at any time before death, a warranty deed for consideration (no matter how slight) is irrevocable between the parties once executed—and once filed, is valid against the world. The rule of ***Kyle*** affects testators of wills, not grantors in deeds.

¶12. The provisions in Wood's will and Lum's deed also differ. Wood left his wife a life estate in his property with the power to dispose. Lum, however, did not deed his daughter a life estate with the power to dispose, but rather conveyed the property by a general warranty deed to his daughter in fee and *reserved* unto himself a life estate. The provisions of Wood's will were testamentary *gifts*. His nephew Kyle was a mere remainderman. The Lum-Crotwell deed was not a gift; it was a completed transfer or conveyance of real property with no

---

[10]*See generally* Title 89 of the Mississippi Code ("Real and Personal Property") and Title 91, chapter 5 ("Wills and Testaments").

[11] *See* Miss. Code Ann. § 89-1-3 (Rev. 2011).

[12]*See Devise*, Webster's II New College Dictionary 311 (2001) ("The act of transmitting or giving real property by will.").

reference to a contingent remainder. Crotwell was Lum's grantee. T&W's attempt to use testamentary law to settle a deed dispute is no less repugnant than the contested language in the deed before us.

¶13.    Unlike the cases cited by T&W, the deed from Lum to Crotwell was not a future gift. It was not an enhanced life estate with potential remaindermen. The deed effected a present conveyance, consideration of which was acknowledged in the deed. Lum "convey[ed] and warrant[ed]" the property to Crotwell. And as the chancellor noted, "warrant" conveys a statutorily defined meaning. *See* Miss. Code Ann. § 89-1-33 (Rev. 2011) ("The word "warrant" without restrictive words in a conveyance shall have the effect of embracing all of the five (5) covenants known to common law, to wit: seizin, power to sell, freedom from incumbrance, quiet enjoyment and warranty of title."). The warranty deed contained no restriction on the warranty. Thus any attempt to reserve the power to reconvey, or convey again, fee simple title is repugnant to the grant of the warranty, which included all of the aforementioned covenants, as found by the learned chancellor.

¶14.    A deed case directly on point which validates the chancellor's decision is ***Dukes v. Crumpton***, 103 So. 2d 385, 386 (Miss. 1958). The deed from Dukes to Crumpton contained the following provision: "Grantor or his successor reserve all rights of sale and management." This Court held that such a provision "is an illegal and void restraint upon alienation and repugnant to the granting clause of the deed." ***Id.*** at 388. T&W attempts to distinguish ***Dukes***, arguing that while the reservation in ***Dukes*** was perpetual, the one from Lum to Crotwell terminated with the life estate. However, the shortened life of the

8

reservation does not render an otherwise repugnant clause valid. The fact remains that a present conveyance, for which sufficient consideration was duly acknowledged, was executed, subject only to a life estate. That conveyance carried with it the five covenants that attached to the warranty of the deed. Because the warranty was without restriction, any reservation of the right of the grantor to sell fee simple title to property already conveyed was repugnant to the covenant of the power to sell included in the grant and warranty to Crotwell. Pursuant to the deed, Crotwell acquired ownership of the property upon delivery of the deed—March 13, 1973. Lum could not subsequently convey to Prestage property he no longer owned.

¶15.     The dissent is correct that, when interpreting deeds, we look to the language employed in the deed to determine and effectuate the intent of the parties.[13] Before making an omniscient declaration of the parties' intent, the dissent contorts and amends the "plain language of the deed" by asserting (1) that "Lum's deed conveyed to Lucille no present interest in the property," (2) that it instead "provided her a contingent remainder," and (3) that it "clearly stated that title to the property in fee simple would vest in Lucille only upon Lum's death provided he had not otherwise conveyed the property during his lifetime." Diss. Op. at ¶ 20. Yet none of these conclusions is supported by the words of the deed. The language of the deed effectuates a present conveyance: "I, Gilbert Lum, [address] *convey* and warrant to Lucille Lum Crotwell [address]" the described forty acres (emphasis added). The

_____

[13]We cannot, however, effectuate an intent that our law does not allow. For instance, property cannot be conveyed to two people who are not married to each other as an estate by entirety. *See Ayers v. Petro*, 417 So. 2d 912, 914 (Miss. 1982) ("An estate by entirety may exist only in a husband and wife . . . .").

9

deed recites and acknowledges receipt of consideration, and Lum swore it was delivered. Nowhere in the deed does it describe Crotwell's interest as a contingent remainder. Nor did Lum transfer, grant, or convey *a life estate*. He conveyed the described property to Crotwell while *reserving* unto himself a life estate. There were no words of inheritance in the deed, either in the warranty portion or following the reservation to himself. Upon his death, his life interest dissolved. Had Lum conveyed to himself a life estate with the right to dispose of the property, remainder to Crotwell (as the dissent would characterize the deed before us), the dissent's interpretation of his intent would hold water.[14] But such is not the case.

¶16.    We agree with the chancellor that Lum retained an ownership interest in the property—his life estate—which he retained the right to sell during his lifetime. But rather than "fail[ing] to recognize a contingent remainder,"[15] we restrict our analysis to the words of the deed and decline to create a contingent remainder when one is not contained therein.

## CONCLUSION

¶17.    We decline to rely on cases from other states which are not only factually distinguishable, but are based on laws foreign to our own. Reading Lum's reservation of a life estate to include a right to reconvey fee simple title is repugnant to the deed's granting clause. Contrastingly, reading the reservation as reserving Lum's right to dispose of his life

---

[14]Such a conveyance would have required no delivery to Crotwell, but Lum swore he did so. So too would it have been unusual for a remainderman to pay good and valuable consideration for a mere contingent remainder, the benefit of which could be lost before the ink dried on the document. Nor does one provide warranties to a remainderman. All militate against the dissent's interpretation.

[15]*See* Diss. Op. at ¶ 30.

10

estate harmonizes the reservation with the granting clause. Thus, as found by the chancellor, Lum reserved unto himself a life estate only. During his lifetime, he could convey only what interest he owned, *i.e.*, his life estate. We affirm the judgment of the Chancery Court of Scott County and remand the case to that court for proceedings consistent with this opinion and disposition of the remaining claims.

¶18.　**AFFIRMED AND REMANDED.**

　　**KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.　DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J.**

　　**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶19.　Under Mississippi law, "a deed must be construed as a whole without separating it into its formal parts, and" where—as here—the meaning of a deed is called into question, courts must determine "the intent of the parties thereto" by looking to "the language therein employed."[16]　The language employed in the deed before us leaves no room for doubt as to what the parties intended to accomplish.　And because the majority ignores both the plain language of the deed and the intent of the parties, I respectfully dissent.

---

[16] ***Manson v. Magee***, 534 So. 2d 545, 548 (Miss. 1988) (citing ***Deason v. Cox***, 527 So. 2d 624 (Miss. 1988); ***Lackey v. Corley***, 295 So. 2d 762 (Miss. 1974); ***Rogers v. Moran***, 250 Miss. 9, 164 So. 2d 480 (1964); ***Ford v. Jones***, 226 Miss. 716, 85 So. 2d 215 (1956); ***Texas Gulf Producing Co. v. Griffith***, 65 So. 2d 834, 836 (Miss. 1953); ***Gulf & S.I.R. Co. v. Patten***, 180 Miss. 756, 178 So. 468 (1938); ***Goff v. Avert***, 122 Miss. 86, 84 So. 134 (1920)).

¶20. Importantly—and contrary to the majority's conclusion—Lum's deed conveyed to Lucille no present interest in the property.[17] Instead, it provided her a contingent remainder[18] and clearly stated that title to the property in fee simple would vest in Lucille only upon Lum's death, provided he had not otherwise conveyed the property during his lifetime. Specifically, the deed provided:

> Grantor, however, does hereby expressly RESERVE unto himself a life estate in the foregoing lands coupled with a full and absolute disposition to be exercised by him as though he were the fee simple owner thereof.

The majority quotes this critical language from the deed, but then neither accounts for it nor gives it effect. Instead, the majority analyzes the deed as if this language did not exist.

_____

[17] A present interest is "[a] property interest in which the privilege of possession or enjoyment is present and not merely future; an interest entitling the holder to immediate possession." *Present Interest*, Black's Law Dictionary 695 (abr. 9th ed.). A future interest is "[a] property interest in which the privilege of possession or of other enjoyment is future and not present." *Future Interest*, Black's Law Dictionary 694 (abr. 9th ed.). Both may be presently conveyed. For instance, if Person A executes and records a deed granting Person B a life estate—a present interest—and Person B the remainder—a future interest—both interests have been presently conveyed. The majority errs because it conflates a present conveyance with a present interest. The majority believes that because Lum delivered a deed to Crotwell, *ipso facto* Crotwell must have a present interest. But that has never been the law of real property. *See* **Whittington v. Whittington**, 608 So. 2d 1274, 1280 (Miss. 1992) (recognizing that a remainder interest was created by the present conveyance of a deed). I agree Lum presently conveyed an interest to Crotwell. But that interest was a future one: a contingent remainder.

[18] A contingent remainder is "[a] remainder that is either given to an unascertained person or made subject to a condition." *Contingent Remainder*, Black's Law Dictionary 1101 (abr. 9th ed.).

12

¶21.    In *Kyle v. Wood*, this Court recognized the validity of Lum's reservation.[19] J.A. Wood owned a one-half interest in a piece of real property.[20]  In his will, J.A. left the property to his wife, Molly Wood, "to have to hold during her life time to use, sell and dispose of as she sees fit."[21]  The will also provided that "at her death, then such property left to my said wife by me is to be given to my nephew, by marriage, Arthur Kyle."[22]  After J.A. died, Molly conveyed the interest to Joe and Ethel Wood by warranty deed.[23]  But after Molly's death, Kyle claimed he owned the interest as remainderman to Molly's life estate.[24]

¶22.    This Court considered whether Molly's conveyance to Joe and Ethel was valid despite the fact that she was conveyed a life estate and Kyle had been named as remainderman.[25] This Court recognized that:

> A general power to sell, without restriction as to either purpose or grantee, leaves the donee of the power free to sell and do as he wishes with the proceeds, without responsibility to anyone, *even though the donee of the power has a life estate* and there is a gift over of the remainder. This has been held true even though the sale may have been made for the purpose of defeating the remainder.[26]

---

[19] *Kyle v. Wood*, 227 Miss. 717, 86 So. 2d 881 (1956).

[20] *Id.* at 882.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 883.

[24] *Id.* at 882–83.

[25] *Id.* at 883.

[26] *Id.* (emphasis added).

13

¶23. The case now before us involves exactly this principle. The deed in question, like the will in *Kyle*, conveyed a life estate to Lum coupled with the right to dispose of the property during his lifetime. It also named Lucille as remainderman. Under *Kyle*, Lum possessed "the power free to sell and do as he wishes with the proceeds, without responsibility to anyone, even though [he] has a life estate and there is a gift over of the remainder" to Lucille. So Lum's conveyance to Prestage was valid, and Lucille's contingent remainder never vested because the contingency did not occur: that is, Lum did not die prior to conveying the property to a third party.

¶24. And contrary to the majority's suggestion, this holding from *Kyle* did not address an issue of the law of wills and testaments,[27] but rather an issue of life estates and contingent remainders—both matters of property law and squarely at issue here. The vehicle for the conveyance—deed or will—played no part in the *Kyle* court's analysis or holding.

¶25. The majority ignores *Kyle* and strikes Lum's reservation from the deed based largely on its misreading of this Court's decision in *Dukes v. Crumpton*, which is wholly inapposite to the facts of this case because the deed in that case conveyed a present fee simple interest in certain property.[28] In that deed, the grantor reserved "all rights of sale and management."[29] The majority correctly notes that this Court held the reservation in *Dukes* void as an illegal

---

[27] Maj. Op. at ¶ 9.

[28] *Dukes v. Crumpton*, 233 Miss. 611, 103 So. 2d 385, 386–88 (1958).

[29] *Id.* at 386.

14

restraint on the alienation of property,[30] but the majority fails to analyze the reason this Court did so, which clearly renders the majority's reliance on **Dukes** misplaced.

¶26.   Simply stated, one may not convey a present fee interest in property and, at the same time, reserve the right to sell it.  As the **Dukes** court recognized, "the right of alienation is an indispensable incident *to an estate in fee*, such as was, in our opinion, conveyed by the granting clause of the deed here in question."[31]  So, because that deed conveyed an interest in fee, "the provision added by the grantor, to-wit 'grantor or his successor reserve all rights of sale and management' is an illegal and void restraint upon alienation and repugnant to the granting clause of the deed."[32]

¶27.   The grantor in **Dukes** conveyed a *present* fee simple interest: that is, his ownership of the interest ceased at the moment of conveyance.  Thus, this Court properly held that he could not reserve the right to sell property he no longer owned, and that the grantee, having taken the property in fee simple, must also take the right of alienation.

¶28.   But the deed before us today includes no fee simple conveyance.  Indeed, it includes no conveyance of a present interest at all.  Instead, it includes the conveyance of a future interest: a contingent remainder.  Unlike the grantor in **Dukes**, Lum retained an ownership interest in the property: his life estate.  And because the reservation of a right to sell was limited in duration to Lum's life estate, it did not act as a restraint on Lucille's right to

---

[30] *Id.* at 388.

[31] *Id.* (emphasis added).

[32] *Id.*

alienation of the property. Rather, it created the contingency upon which Lucille's interest was predicated. Had Lum not conveyed the property during his lifetime, Lucille's remainder would have vested upon his death in fee simple, and she would have possessed the full right of alienation of her property.

¶29. The majority states "Crotwell acquired ownership of the property upon delivery of the deed—March 13, 1973."[33] Assuming by "ownership of the property"—a colloquialism void of legal meaning—the majority intends to say she acquired some interest in the property that day, I agree. But the question is not whether Lucille acquired *some* interest. The question is *what type* of interest she acquired. Giving effect to the plain language of the deed and the clear intent of the parties, she acquired a contingent remainder, and nothing more.

¶30. Because the majority fails to recognize a contingent remainder, fails to give effect to the clear language of the deed, and fails to recognize this as the clear intent of the parties, I must respectfully dissent.

**WALLER, C.J., JOINS THIS OPINION**.

---

[33] Maj.Op. at ¶ 14.

16