# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00331-SCT

*JAMES KENDALL CROTWELL AND TERRY CROTWELL*

*v.*

*T & W HOMES ETC, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2020 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| TRIAL COURT ATTORNEYS: | RICHARD M. LINGLE |
| | THOMAS D. LEE |
| | MICHAEL ALAN JEDYNAK |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | RICHARD M. LINGLE |
| ATTORNEY FOR APPELLEE: | THOMAS D. LEE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 05/20/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND MAXWELL, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This dispute concerns an acre of land in Scott County, Mississippi. This case previously was before the Court on interlocutory appeal regarding another issue. *See T & W Homes v. Crotwell*, 235 So. 3d 66 (Miss. 2017). Now it is before us concerning a counterclaim of T & W Homes Etc, LLC (T & W), which asserts that T & W acquired the disputed real property by adverse possession. At the trial level, James and Terry Crotwell (the Crotwells) contended that T & W did not acquire the property by adverse possession or quitclaim deed, arguing that T & W could not satisfy the requirements for tacking its time

to that of its predecessor, Richard Prestage. The Crotwells took this position, claiming that the foreclosure sale by which T & W had acquired the property was void. After a hearing, the chancellor concluded that Prestage had satisfied the adverse possession elements and that, even if the foreclosure sale were void, the quitclaim deed, which was executed seven years after the foreclosure, conveyed title to T & W. The Crotwells appeal.

¶2.     The Crotwells argue that T & W did not acquire the property by adverse possession because T & W cannot "tack" its time with its predecessor's time because "the deed of trust was void at the time of the foreclosure." The Crotwells argue also that the quitclaim deed failed to give T & W title to the property because "[w]hen the Quit-Claim deed was solicited from Prestage seven (7) years after his abandonment, he had no interest to convey, and the purported deed left a time gap of over seven (7) years."

¶3.     T & W avers that "adverse possession vested title to Prestage on June 20, 2008" and that, even "if the deed to Prestage and the foreclosure by Wells Fargo [are] void, adverse possession under color of title prevails." T & W argues also that "Prestage acquired title to the one acre by adverse possession on June 8, 2008, which has in effect closed the door on Appellant's argument to the Court."

¶4.     We find that even though the 2006 deed of trust was void *ab initio* and the foreclosure sale likewise was void, Prestage acquired title to the property in 2008 through adverse possession for the requisite ten years. Further, we find that Prestage did not lose the title until

he conveyed it to T & W by means of a quitclaim deed in 2018. Therefore, we affirm the chancellor's decision. Title to the real property belongs to T & W.

## FACTS

### A)    Case History

¶5.    Gilbert Lum owned land in Scott County, Mississippi. In 1973, "Lum conveyed, by warranty deed, a forty-acre tract of land to his daughter, Lucille Crotwell." *Crotwell*, 235 So. 3d at 68. The warranty deed contained the following relevant language: "Grantor, [Lum,] however, does hereby expressly RESERVE unto himself a life estate in the foregoing lands coupled with a full and absolute disposition to be exercised by him as though he were the fee simple owner thereof[] also RESERVING unto himself all mineral interest owned by him in said lands for his lifetime." *Id.* (second alteration in original).

¶6.    "On June 8, 1998, Lum executed a warranty deed for one acre of the forty-acre tract to Richard Prestage, [his grandson,] subject to his life estate for the mineral interests of that one acre, in addition to excepting all prior mineral rights." *Id.* Gilbert Lum died on June 29, 1998. A month after his grandfather's death, Prestage executed a promissory note to First Family Financial Services Inc., ostensibly secured by a deed of trust on the acre of land. Prestage executed another deed of trust with First Family Financial Services Inc. in February 1999. On January 5, 2000, Prestage executed a deed of trust on the acre of land to Affordable Mortgage Corporation. In August of 2002, by special warranty deed, Prestage deeded the one acre of land "from himself to himself and his wife, Sheri, as an estate by the entirety with full

3

rights of survivorship." *Id.* On September 25, 2006, "[t]he Prestages . . . executed a deed of

trust in favor of American Title Company, Inc., as trustee for Hurricane Mortgage Company,

Inc.[,]" which was recorded on October 2, 2006. *Id.* The following then occurred:

> This deed of trust ultimately was assigned to HSBC Bank, USA, N.A., as
> trustee for Wells Fargo Asset Securities Corporation Home Equity-Backed
> Certificates. On August 10, 2011, Emily Courteau, as Substituted Trustee,
> conducted a foreclosure sale of this deed of trust. T & W Homes, Etc, LLC ("T
> & W") was the successful bidder and received a Substitute Trustee's Deed.
>
> On December 13, 2011, the Crotwells filed a complaint to confirm title,
> remove cloud on the title, and for ejectment. The parties filed competing
> motions for summary judgment. The chancellor found that Lum had reserved
> a life estate only, and that a reservation of the right to reconvey fee simple title
> was "an illegal and void restraint upon alienation and repugnant to the granting
> clause of the deed." T & W filed an interlocutory appeal as to this one issue.

*Id.* at 68-69. The issue on interlocutory appeal was whether the language used by Lum in the

deed "was an illegal and void restraint upon alienation and repugnant to the granting clause

of the deed." *Id.* at 69. This Court determined that "[t]he Lum-Crotwell deed was not a gift;

it was a completed transfer or conveyance of real property with no reference to a contingent

remainder" and that "Lum could not subsequently convey to Prestage property he no longer

owned." *Id.* at 71. Thus, this Court held:

> Lum reserved unto himself a life estate only. During his lifetime, he could
> convey only what interest he owned, *i.e.*, his life estate. We affirm the
> judgment of the Chancery Court of Scott County and remand the case to that
> court for proceedings consistent with this opinion and disposition of the
> remaining claims.

*Id.* at 72.

4

### B) Facts Regarding the Remand

¶7. One of the remaining claims was T & W's counterclaim, which alleged that T & W had acquired title to the property "by virtue of adverse possession." T & W argued that it and its "predecessor's [sic] in title, have since June 8, 1998, maintained an adverse, hostile, peaceable, actual, open, notorious, exclusive, and continuous possession of the one (1) acre tract . . . for more than 10 years (13 years 6 months) prior to this cause of action being filed." The Crotwells claimed that "T & W took title as a purchaser in a void foreclosure and has no privity with a predecessor in title to which to tack the time of possession."

¶8. A hearing was set for October 3, 2018, to address T & W's counterclaim. The day before the hearing, T & W obtained a quitclaim deed from Prestage and his wife that conveyed "all of [the Prestages's] right, title, and interest in and to the land[.]"[1] This quitclaim deed was executed seven years after the date of the foreclosure sale.

¶9. After a hearing, the chancellor entered his final judgment on February 26, 2020. In that final judgment, the chancellor addressed each of "the six elements" needed to establish Richard Prestage's adverse possession claim and determined that:

> First, did Richard claim ownership in the one acre? Without doubt he did as shown by his building the house and by the deed from his grandfather.
>
> Second, was his use of the property actual or hostile? By clear and convincing evidence the [c]ourt finds same was actual as well as hostile as

---

[1] At the time of the hearing, the quitclaim deed had not been recorded; it was only signed by Prestage and his wife. The quitclaim deed later was recorded on October 4, 2018.

evidenced by the building of the home in which he resided and by arguing with Lucille in the presence of the surveyor.

Third, was his use of the property open, notorious and visible? Once again, the [c]ourt finds those elements established in this cause by clear and convincing evidence. One cannot be more clear in the use of the land than by living on same in open view.

Fourth, was Richard's use of the land continuous and uninterrupted for a period of ten years? He began building the home in 1997 and continued building same after his grandfather died in 1998. He suffered the foreclosure in 2011. For over 13 years he used the property which has ben[sic] proven by clear and convincing evidence.

Fifth, was this use exclusive? It was as same was his residence and it has not been shown that any other person used any other part of the land.

Sixth, was the use peaceful[?] It was without question.

The chancellor concluded:

1)    Clear and convincing evidence showed that Prestage adversely possessed the one acre tract of land. Therefore, "the one acre tract deeded to [Prestage] by Gilbert Lum became vested in him as the '. . . actual occupant or possessor . . .' of the said acre" and "the Crotwells no longer have interest in the one acre tract."

2)    "Whether the foreclosure was valid and enforceable is of no moment here. Assuming it to be void, the Quitclaim Deed from Richard and wife, Sherry, to T & W, conveyed the interest of the Prestages to T & W. Therefore, the [c]ourt finds that the property is vested in T & W Homes."

¶10.    The Crotwells appeal the chancellor's decision. The Prestages are not parties to this action, and neither party challenges the sufficiency of Richard Prestage's adverse possession, *i.e.*, whether he satisfied the necessary elements to establish adverse possession.

6

## STANDARD OF REVIEW

¶11. "Questions of law are reviewed de novo." *Browder v. Williams*, 765 So. 2d 1281, 1284 (Miss. 2000) (citing *Holliman v. Charles L. Cherry & Assocs. Inc.*, 569 So. 2d 1139, 1145 (Miss. 1990)). "The findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard." *Powell v. Campbell*, 912 So. 2d 978, 981 (Miss. 2005) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000)). This Court "review[s] a chancellor's decision under an abuse of discretion standard." *Id.* (citing *McNeil*, 753 So. 2d at 1063).

## DISCUSSION

**A)    Did the foreclosure on the 2006 deed of trust establish privity of possession?**

¶12. "The adverse possession of successive occupants in privity with each other may be combined to reach the statutory period, a concept generally known as 'tacking.'" *Buford v. Logue*, 832 So. 2d 594, 606 (Miss. Ct. App. 2002) (citing *Rutland v. Stewart*, 630 So. 2d 996, 999 (Miss. 1994)); *see also* 3 Am. Jur. 2d *Adverse Possession* § 70, Westlaw (database updated Feb. 2021) ("A claimant . . . may tack his or her period of adverse possession with that of his or her predecessors in order to meet the applicable statutory period to confer title by adverse possession."). This Court has recognized that:

> In order that one adverse possession may be tacked to another, there must exist privity of possession between the holders thereof. "As a general rule, it may be stated that the requisite privity may be created by any conveyance, agreement, or understanding, that has for its object the transfer of possession and is accompanied by a transfer in fact." 2 Cyc. 451.

7

*Walters v. Rogers*, 222 Miss. 182, 75 So. 2d 461, 462 (1954) (quoting *Crowder v. Neal*, 100

Miss. 730, 57 So. 1, 3 (1911)).

¶13.     The Crotwells assert that "T & W does not meet the requirements for 'tacking'"

because "T & W's interest did not arise out of a conveyance, an agreement, or any

understanding from a predecessor in title that in fact transferred possession to T & W without

a break in possession" as "the deed of trust was void at the time of the foreclosure." The

Crotwells maintain that, at the time Prestage entered into the deed of trust in 2006, he "did

not have the legal right to execute a valid deed of trust encumbering the one (1) acre tract of

real estate . . . . Thus, the deed of trust was void at its inception[.]"

¶14.     T & W disagrees and argues that "[i]f the deed to Prestage and the foreclosure by

Wells Fargo is void, adverse possession under color of title prevails." T & W maintains that

"Prestage had a recorded deed along with color of title on his property, Wells Fargo had a

recorded mortgage along with color of title on its Deed of Trust given by Prestage, and the

Trustee recorded a Trustee's Deed to T & W Homes with color of title." But the Crotwells

assert that "[s]ince the deed of trust is void, the foreclosure on the deed of trust is also void"

and under the doctrine of *caveat emptor*, T & W did not acquire any type of interest as a

purchaser at a void foreclosure sale.

¶15.     We agree with the Crotwells and find that Prestage did not own an interest in the

property in 2006 when he executed the deed of trust with the mortgage company. Lum

deeded the one-acre tract to Prestage on June 8, 1998. This Court held previously that Lum

8

had a life estate only after he had deeded the entire forty acres to his daughter, Lucille Crotwell, in 1973. *Crotwell*, 235 So. 3d at 72. Thus, any interest Prestage had in the land expired at the end of Lum's life, which occurred on June 28, 1998. Similar to this Court's finding that "Lum could not subsequently convey to Prestage property he no longer owned[,]" *id.* at 71, Prestage could not convey, via deed of trust, an interest in land he did not own. Prestage's record interest in the one-acre parcel had been extinguished by his grandfather's death.

¶16.    The trustee's deed stated that the grantor could "convey only such title as is vested in [the] Substitute Trustee." After Lum's death, Prestage became an unwitting trespasser on the land. Although Prestage eventually satisfied the adverse possession requirements, that did not occur until 2008, which was two years after he had entered into the deed of trust that was foreclosed. Because Prestage had not completed the total ten years needed for adverse possession when he entered into the deed of trust, he did not have title to the property at that time. Therefore, the substituted trustee was not vested with any title to convey.

¶17.    Additionally, this Court has held that "[c]aveat emptor still reigns at foreclosure sales." *Hill v. Thompson*, 564 So. 2d 1, 11 (Miss. 1989) (citing *Feldman v. Rucker*, 109 S.E.2d 379, 385-86 (Va. 1959)); *see also Stonecipher v. Kornhaus*, 623 So. 2d 955, 962 (Miss. 1993) ("[A]lthough [the] doctrine [of caveat emptor] has been eroded by the application of implied warranties concerning chattels, the rule has remained intact as to the

9

sale of land."). Under the doctrine of *caveat emptor* and because the substituted trustee had no interest to convey, we find that T & W acquired nothing at the void foreclosure sale.

¶18. The 2006 deed of trust between Prestage and Hurricane Mortgage was void *ab initio*. "A transaction that is 'void ab initio' is null and void from its inception, and as a matter of law it is as if the transaction never even happened." ***Thoden v. Hallford***, 310 So. 3d 1156, 1160 (Miss. 2021) (internal quotation marks omitted) (quoting ***Rebuild Am., Inc. v. Drew***, 281 So. 3d 92, 100-01 (Miss. Ct. App. 2019)). The parties here should be "restored to the status in which they would have been if the contract had never been made." ***Mellott v. Love***, 152 Miss. 860, 119 So. 913, 913 (1929) (citing ***French v. McAndrew***, 61 Miss. 187, 192 (1883)).

### B) Did the 2018 quitclaim deed convey title to T & W?

¶19. The Crotwells claim that the quitclaim deed between Prestage and T & W executed in 2018 "fails to establish privity" for tacking purposes because it was executed seven years too late. Specifically, the Crotwells assert that "[w]hen the Quit-Claim deed was solicited from Prestage seven (7) years after his abandonment, he had no interest to convey, and the purported deed left a time gap of over seven (7) years." The Crotwells assert also that "Prestage relinquished any claim he may have had to possession of the property when he moved off and abandoned the property at the time of the foreclosure."

¶20. T & W argues that privity between T & W and Prestage was not required because "adverse possession vested title to Prestage on June 20, 2008." T & W posits that it did not

need to tack its time of possession onto Prestage's time because Prestage had acquired full and complete title in 2008 when his adverse possession claim vested and that Prestage and his wife had conveyed that title to T & W via the 2018 quitclaim deed.

¶21. Mississippi Code Section 15-1-13(1) provides:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a *full and complete title*[.]

Miss. Code Ann. § 15-1-13(1) (Rev. 2019) (emphasis added). This Court has held:

> [T]he ordinary and normal sweep of the statute operates to invest the adverse occupant upon the completion of the statutory period with a new and independent title to every estate in the land—a title not derived at all from or in any privity whatever with any former owner, 2 C.J.S., Adverse Possession, § 200, p. 804; 4 Tiffany, Real Property, 3rd Ed., Secs. 1171, et seq., and which may be used defensively by the occupant not only but also as an adequate basis to confirm or quiet his title.

*Levy v. Campbell*, 200 Miss. 721, 28 So. 2d 224, 226 (1946) (citing *Fant v. Williams*, 118 Miss. 428, 79 So. 343 (1918)). Simply put, "[i]t is the fact of adverse possession and the claim of ownership for the statutory period that confers title[.]" *Daniels v. Jordan*, 161 Miss. 78, 134 So. 903, 904 (1931) (citing *Jones v. Gaddis*, 67 Miss. 761, 7 So. 489 (1890)); *see also* *Taylor v. Bell*, 87 So. 3d 1134, 1138 (Miss. Ct. App. 2012) ("It is well-settled Mississippi law that once the elements of adverse possession have been satisfied, a full and complete title is vested in the adverse possessor." (citing *Levy*, 28 So. 2d at 226)).

¶22. Here, Prestage's adverse possession time started when his grandfather died in June 1998 and vested ten years later in June 2008. Thus, Prestage obtained full and complete title to the property in June 2008.

¶23. But three years after Prestage acquired full and complete title of the acre by adverse possession, he surrendered possession of the property under the mistaken belief that it was being taken from him through a lawful foreclosure. The question then becomes whether Prestage in fact lost his title as a result of the foreclosure sale. Because the 2006 deed of trust was void *ab initio*, the foreclosure sale was a nullity and the parties' legal positions with respect to the acre of land were not affected by the attempted foreclosure, as if the deed of trust and foreclosure never had occurred. To be clear, in the attempted foreclosure sale Prestage did not lose the title he had acquired by adverse possession.

¶24. The Crotwells contend that "T & W, allowed a gap to occur by which it could not claim adverse[,] open, notorious, exclusive, continuous and [un]interrupted possession as required by *Powell* [*v. Meyer*, 203 So. 3d 648 (Miss. Ct. App. 2016),] and [Mississippi Code Section] 15-1-13(1) even if it had acquired a Quit-Claim deed from Prestage in 2011." At the time the 2018 quitclaim deed was executed, Prestage had not been in physical possession of the property for the previous seven years.

¶25. But this Court has held that "[w]hen the plaintiffs had once acquired title by adverse possession, it would take either a conveyance or an adverse possession against them for the statutory period to reacquire the title." *Lowi v. David*, 134 Miss. 296, 98 So. 684, 685 (1924);

12

*see Jordan v. Fountain*, 986 So. 2d 1018, 1022 (Miss. Ct. App. 2008) ("Once property has been acquired by adverse possession, ownership cannot be divested without a conveyance or another adverse possession for the statutory period of time required to reacquire the title." (citing *Lowi*, 98 So. at 685)); *see also Taylor v. Bell*, 87 So. 3d 1134, 1138 (Miss. Ct. App. 2012) ("Title can be lost only by proper transfer, such as deed, will, or intestacy, or by another period of possession ripening title in a new adverse user." (citing *Gillespie v. Kelly*, 809 So. 2d 702, 711 (Miss. Ct. App. 2001) (citing *Lowi*, 98 So. at 685)). In *Levy*, this Court stated that "when the adverse occupant has made his proof of the ten years adverse possession, this is enough to entitle him to judgment or decree, and he need not prove more[.]" *Levy*, 28 So. 2d at 226-27; *see also Cronier v. ALR Partners L.P.*, 248 So. 3d 861, 870 (Miss. Ct. App. 2017) ("[The adverse possessors] do not need to prove continuous uninterrupted possession for more than ten years. Instead, title ripened after ten years of continuous uninterrupted possession, after which the former property owner would have to prove adverse possession in his own favor to regain title.").

¶26.    In *Fant*, this Court recognized that:

> The authorities are agreed that any inquiry as to the continuity of possession claimed to be adverse *is pertinent only in event the adverse possession has not been continuous for the required number of years, necessary to confer title*. Our court dealt with this question in *Geo*[*g*]*hegan v. Marshall*, 66 Miss. 676, [6 So. 502 (1889),] an ejectment suit in which the court condemned certain instructions given for the plaintiff. The defendant there relied upon title by adverse possession, but the plaintiff's instructions told the jury that they must believe the defendant had been in the actual adverse possession of this land for "10 years next before the commencement of this suit." Our court by Cooper, J., observed:

13

"If the defendant was in adverse possession of the lands in controversy for the period of time necessary to create title, it is immaterial whether that possession immediately preceded the institution of plaintiff's action. It is sufficient if at any time there was such possession under a parol gift, for its effect would be to transfer the title of the donor to the possessor, who would thus become owner, and a *vacancy in the possession thereafter intervening would not affect the perfect title already vested*. The question involved is whether the defendant is the owner of the land by adverse possession, and not when he became such owner."

*Fant*, 79 So. at 345 (emphasis added). The *Fant* Court concluded that "land acquired by adverse possession cannot be lost by mere abandonment." *Id.*; *see also* ***Walker v. Polk***, 208 Miss. 389, 44 So. 2d 477, 485 (1950) ("In this State the common-law rule prevails that save as to easements, or licenses or mere equities, abandonment is not effective to divest the title to real estate, and that as to fee simple titles, these are lost only by estoppel or by adverse possession, or by maintainable tax sale." (internal quotation marks omitted) (quoting ***Meyerkort v. Warrington***, 19 So. 2d 433, 435 (Miss. 1944), *opinion withdrawn by* ***Meyerkort v. Warrington***, 198 Miss. 29, 20 So. 2d 708 (Miss. 1945) (mem.))). Thus, we find it insignificant that Prestage moved off the property in 2011 after the attempted foreclosure sale and that a seven-year interim occurred from his loss of possession to his signing the quitclaim deed.

¶27. Prestage obtained full and complete title in June 2008 via adverse possession. Therefore, his title thus acquired could be lost only by a conveyance from him or by another adverse possessor's satisfaction of the statutory period to acquire title. *Lowi*, 98 So. at 685;

14

*see also Taylor*, 87 So. 3d at 1138. Prestage did not lose his title to the property until he conveyed it away by means of the 2018 quitclaim deed. We hold that T & W acquired title to the property by means of the 2018 quitclaim deed.

## CONCLUSION

¶28.    The chancellor determined correctly that the 2018 quitclaim deed legally conveyed Prestage's interest in the property to T & W. This Court cannot say that the chancellor's findings were "manifestly wrong, clearly erroneous, or applied the wrong legal standard." *Powell*, 912 So. 2d at 981 (citing *McNeil*, 753 So. 2d at 1063). Therefore, this Court affirms the chancery court's judgment in favor of T & W.

¶29.    **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.  GRIFFIS, J., NOT PARTICIPATING.**

15